CASE 41.—ACTION BY CHARLES H. BINDELL AND OTHERS
        AGAINST THE KENTON COUNTY ASSESSMENT
        FIRE INSURANCE COMPANY UPON A FIRE IN-
        SURANCE POLICY.—March 13.

# Bindell v. Kenton County Ass'mt Fire Ins. Co

Appeal from Kenton Circuit Court.

Judgment for defendant.    Plaintiffs appeal.—Re-
versed.

1. Insurance — Destruction of Property by Insured — Liability
   Under Policy.—Though there is no clause in a fire policy that
   insurer shall not be liable if the property is destroyed by
   insured, it will not be liable if the poperty is destroyed by
   his voluntary, fraudulent, corrupt, or wrongful act.
2. Same—Destruction of Property by Insured While Insane—
   Pleading.—The reply, in an action on a fire policy, stating
   that, if the fire was started by insured, he was temporarily
   insane and incapable of forming any wrongful or fraudulent
   design, sufficiently, though inaptly, avers the insanity of
   insured at the time he burned the property.
3. Same—Liability of Insurer.—Though ordinarily an insane per-
   son is civilly liable for his acts, yet his burning his insured
   property does not relieve insured of liability, any more than
   would the destruction of it by insured through his caresless-
   ness or negligence, not amounting to fraud or wilful mis-
   conduct.

SCHMIDT & HOLMES for appellant.

FRANK M. TRACY for appellee.

No briefs.   Record misplaced.

OPINION OF THE COURT BY JUDGE CARROLL—Revers-
ing.

In this action to recover upon a policy of fire insurance the defense was that the property insured was destroyed by the voluntary act of the insured, who died before the case came on for trial. His personal representatives filed the following reply to this answer: "(1) They deny that the fire which destroyed said barn was started by said Charles Bindell, deceased, or the said barn was destroyed as a result of the voluntary act of the said decedent. (2) They state that if the fire which destroyed said barn was started by said Bindell, or if said barn was destroyed as a result of any act of said decedent, he was at the time temporarily insane and incapable of forming any wrongful or fraudulent design. They state that one of said defenses is true, but that they do not know which of them is true." The lower court sustained a demurrer to the second paragraph of this reply, and of this ruling appellants complain.

There is no clause in the policy of insurance providing that the company should not be liable if the property was destroyed by the insured. The absence, however, of such a stipulation would not render the company liable if the destruction of the property was caused by the voluntary, fraudulent, corrupt, or wrongful act of the insured. The paragraph of the reply in question is not aptly pleaded. It would have been more in accordance with the rules of good pleading if it had stated that Bindell, if he burned the barn, did not at the time have mind enough to know the nature or quality of his act, and was laboring under such defect of reason as not to be responsible for his conduct, or that, as a result of mental unsoundness, he did not have sufficient will power to know right from wrong or govern his actions. But, although technically defective, we are not prepared to say that the plead-

ing was not sufficient, and will therefore treat the paragraphs as if it averred in apt language the insanity of the insured at the time he burned the barn. We have not found any Kentucky case dealing with the question here presented, although it has been often considered in life insurance cases; and in such cases, where the policy exempted the company from liability if the insured should die by his own hand, it has been ruled that self-destruction did not void the policy when the insured who took his own life was at the time insane. In other words, to avoid the policy, the act of self-destruction must have been voluntary. St. Louis Mutual Life Ins. Co. v. Graves, 6 Bush, 268; Manhattan Life Ins. Co. v. Beard, 112 Ky. 455, 23 Ky. Law Rep. 1747, 66 S. W. 35. A different rule has obtained where the policy contained a stipulation that if the insured should take his own life while insane, or if his act be voluntary or involuntary while sane or insane. The cases construing these last-mentioned provisions may be found in Manhattan Life Ins. Co. v. Beard, supra, and it is not necessary to further mention them here.

If Bindell, while insane, destroyed the insured property, the company can not under the conditions of this policy escape liability for the loss upon this ground. Unless Bindell's act in destroying the property was fraudulent, voluntary, or intentional, the company is bound. It is well settled that, although the negligence or carelessness of the insured may cause or result in the destruction of his property, the company will be liable, unless the carelessness or negligence is of such a character as to amount to fraud or willful misconduct on his part. Ostrander on Insurance, p. 192; 1 Wood on Insurance, p. 274. In 19 Cyc., p. 831, the rule is thus stated "In the absence of fraud or design on

the part of the insured, or some stipulation in the policy, the insurer is not relieved from liability by mere negligence or carelessness of the insured or his servants, although directly contributing to or causing the loss; but, on the other hand, even in the absence of stipulations in the policy, the failure of the insured to take reasonable care to avoid loss, or the doing of wrongful acts directly calculated to bring about the loss, may be such as to defeat a recovery under the policy." The text is supported by numerous authorities, including Scottish Union Ins. Co. v. Strain, 70 S. W. 274, 24 Ky. Law Rep. 958, where this court said: "The law is well settled that insurance companies are responsible for losses caused by a risk insured against, notwithstanding such loss may be directly contributed to by the negligence or carelessness of the assured or its agent." There is no conflict in the authorities upon this proposition. It will thus be seen that to relieve the insurer from liability the destruction of the property must have been caused or brought about by the fraudulent design, voluntary act, or intentional misconduct of the insured. Accepting this doctrine as sound, it necessarily follows that if the insured did not at the time have mind enough to know the nature or quality of his act, and was laboring under such a defect of reason as not to be responsible for his conduct, or as a result of mental unsoundness he did not have sufficient will power to know right from wrong or govern his actions, the destruction of the property by him would not relieve the company. Under the conditions stated, the act of the insured could not have been fraudulent because there can be no actual fraud in the absence of an intent to commit it. It could not be voluntary or intentional because he did not have sufficient mind and memory to do a vol-

untary or intentional act. The acts of an insane person are not voluntary or intentional in the sense that they impose responsibilities that ordinarily flow from the consequences of a voluntary or intentional act committed by a sane person; or, to put it in another way, assuming that Bindell destroyed the property, and at the time he was insane within the definition heretofore given, he was not capable of forming any judgment as to the consequences of his act, and hence the wrongful intent necesasry to constitute a fraudulent purpose, a voluntary or wilful or an intentional act, was lacking. An insane person acts without design, has no will of his own, and is influenced by no motive. So an insane person can form no wrongful or fraudulent design in destroying his own property so far as the insurers are concerned, and the insurers are liable although the insured himself burns the property when insane. In Autremont v. Fire Ass'n, 65 Hun (N. Y. Sup. Ct. Rep.), 475, 20 N. Y. Supp. 344, which was an action to recover on a fire insurance policy, it appears that the insured while insane set fire to the building, and upon this ground the company resisted a recovery; but the court said: "We are unable to see that an insane person can form a fraudulent or wrongful design in the destruction of his own property so as to defeat a policy of insurance thereon any more than he can form a criminal intent in the commission of crime. Mere negligence, however great the degree, is not sufficient to defeat a recovery, provided it does not reach the point of a wrongful or fraudulent purpose, or a wanton disregard of others." To the same effect is Karow v. Continental Ins. Co., 57 Wis. 56, 15 N. W. 27, 46 Am. Rep. 17. It has been suggested that although an insane person is not criminally liable for his acts, and

although a policy of fire insurance will not be avoided if the property is destroyed by the insured while insane, yet that insane persons are responsible to the extent of compensatory damages for any injury done by them, and hence, if Bindell damaged the insurance company by his own insane act, his estate should be required to compensate it for any loss sustained thereby. Generally speaking, a lunatic or insane person is liable for the actual damage resulting from his wrongful acts. Cooley on Torts, p. 99; Williams v. Hays, 143 N. Y. 442, 38 N. E. 449, 26 L. R. A. 153, 42 Am. St. Rep. 743. In 1 Shearman & Redfield on Negligence, section 121, it is said the liability of lunatics to a civil action for the damages caused by their torts, rests "not upon the usual principle of personal fault, for there may be none, but upon the broad ground that, when one of two innocent persons must bear a loss, he must bear it whose act caused it." This question was fully considered by the Wisconsin court in the Karow case, supra, and the conclusion reached that although, if the insured while insane had burned the house of another person, he would be liable for the value thereof, yet the fact that he burned his own house did not relieve the company from liability; and in support of this doctrine a number of cases are cited in the opinion. The reason for the distinction, which is not entirely satisfactory, is rested upon the ground that, as the company can not escape liability upon the policy of insurance for the insane act of the insured, it would be in effect enabling it to do so if it could in an independent action require his estate to compensate it for the loss, or could set it up as a defense to defeat an action brought to recover the amount of the policy. In short, the doctrine seems to be that the company ought not to be allowed by this indirect

means. to defeat a recovery on the policy when it could not have succeeded solely upon the ground that the insured burned it, if, in fact, he was at the time insane. To permit the company to recover from the insured would be going through the idle ceremony or form of paying him the amount of the policy with one hand, and at the same time taking it away from him with the other. If insurance companies do not.desire to be responsible in cases of this character, they should so stipulate in their policies.

For the error in sustaining the demurrer to the reply, the judgment must be reversed, with directions for a new trial not inconsistent with this opinion.