WESTCHESTER FIRE INSURANCE COMPANY *v.* TIDWELL.

4-5729                                              135 S. W. 2d 842

Opinion delivered January 8, 1940.

*Martin, Wootton & Martin, Verne McMillen* and *James I. Teague,* for appellant.

*A. T. Davies* and *Murphy & Wood,* for appellee.

HOLT, J. At about 1:30 a. m. on April 19, 1938, the residence, together with its contents, belonging to appellee, Eddie B. Tidwell, in Hot Springs, Arkansas, was seriously damaged by fire.

Tidwell filed suit against appellant, Franklin Fire Insurance Company, and the Arkansas Investment Company in the Garland circuit court to recover $1,000 fire damage on certain pool room equipment stored in the

---

[4] *Fidelity Deposit Company* v. *Fairfield,* 164 Ark. 498, 262 S. W. 322.

dining room on the first floor of his residence at the time of the fire.

He and his wife, Mary Tidwell, also filed suit against the Westchester Fire Insurance Company, the Franklin Fire Insurance Company, the Arkansas Investment Company and Mrs. May D. Young, administratrix of the estate of Dr. J. K. Young, deceased, to recover $2,000 from the Westchester Fire Insurance Company on the residence and $1,000 from the Franklin Fire Insurance Company on the household goods.

The Westchester Fire Insurance Company filed answer and cross-complaint denying liability on the ground that Eddie B. Tidwell burned or caused the property in question to be burned and for its cross-complaint alleged it had paid Mrs. J. K. Young $755.25 due her by virtue of a mortgage which she held on the residence in question, had taken an assignment of the note and mortgage executed by Eddie B. Tidwell and Mary Tidwell, held and owned by Mrs. Young, administratrix of the estate of her deceased husband, and asked that the case be transferred to equity and the mortgage foreclosed.

The cases were transferred to the chancery court and consolidated for trial.

The record reflects that prior to March 29, 1938, there was no fire insurance carried by appellee, Tidwell, on either his residence property or the contents or personal property contained and stored therein.

However, on March 29, 1938, Tidwell procured a policy for $1,000 on his household goods from appellant, Franklin Fire Insurance Company. On April 18, 1938, he moved certain pool room equipment to his residence, placed it in the dining room thereof on the first floor, and took out another policy with the Franklin Fire Insurance Company on this equipment in the sum of $1,000. On April 12, 1938, he procured a policy in the sum of $2,000 from appellant, Westchester Fire Insurance Company, on his residence.

It further appears from the record that at the time these policies of fire insurance were obtained from appel-

lants by Tidwell, the pool room equipment and household goods were under mortgages totaling some $350. These mortgages had been foreclosed, but Tidwell had been permitted by the mortgage-holders to retain the property in his possession. The mortgages on the pool room equipment .and household goods had been in effect since 1935.

At the same time the residence property was under mortgage for approximately $700 to the estate of Dr. J. K. Young, deceased, and this mortgage was in process of foreclosure.

The fire occurred on the day following the effective date of the fire insurance on the pool room equipment, seven days after the effective date of the insurance on the residence, and about twenty days after the policy on the household goods.

One of the principal defenses set up by appellants, insurance companies, to the suits instituted by appellees was that appellee, Eddie B. Tidwell, burned or caused to be burned the property in question.

After a careful review of the record in this case we have reached the conclusion that the controlling question presented here is the one of fact, and that is whether appellee, Eddie B. Tidwell, burned or caused to be burned the property in question. We, therefore, must determine whether the decree of the learned chancellor is contrary to a preponderance of the testimony on this question, and since it is our view that it is, we set out the testimony somewhat at length.

The chancellor found in favor of appellees against the Westchester Fire Insurance Company in the sum of $1,245, together with 12 per cent. penalty amounting to $240 and $300 attorney's fee, and against the Franklin Fire Insurance Company for $700 on policy covering household goods and $500 under policy covering pool room equipment. From that decree both of the insurance companies have appealed.

Appellee Tidwell testified that the fire occurred at about 1:30 a. m. on April 19, 1938. There was no one in the house at the time except himself. The house was two stories with eleven rooms and two baths of stucco

construction, and he valued the house and contents far in excess of the total amount of insurance carried. He had moved the pool hall equipment into the house the day before the fire and stored it in the dining room. He got home at about twelve o'clock at night and went to bed. He heard some one at the door of his room hollering "fire." He opened the door and further testified: "Well, he came. When I heard him he was at the door of the room that I was in. He made quite a noise hollering 'fire.' So I jumped up and opened the door, and he says, 'The house is on fire and burning up here,' and I grabbed my robe and got out and went over to the fence to my next-door neighbor's and hollered, 'Turn on the alarm.' So this fellow was in the room at the time and he said, 'I got your suit.' I remember that. I think he kept going with the suit. Q. You mean you haven't seen him or the suit either? A. I haven't. Yes, he had the suit, he brought out the suit I was wearing that day. Q. Didn't you see him around there any more? A. I never saw him any more. I had $12.60 in the pockets and he took the suit across the street and robbed the pockets and I haven't seen him since." He saw no one else around the house at the time. He intended to close the house for the summer.

He further testified that when the fire department arrived the house was in a hot blaze but they succeeded in extinguishing the fire before the contents of the house were entirely destroyed and that the residence could not be profitably repaired.

Appellee, Mary Tidwell, wife of Eddie B. Tidwell, testified that she had been keeping roomers up until a few days before the fire. She was in Gary, Indiana, at the time of the fire and had taken her linens with her, two of her husband's suits and many of his shirts. At the time of the fire practically all of the bed sheets and pillow cases had been sent to the laundry.

She further testified that she tried, while at Gary, to refinance the $700 mortgage on the house and had talked with a man named John Dalton Smith, an undertaker there, a friend of her husband, and quoting from her testimony: "Q. What did he say? A. He told me to

tell Tidwell that he would be down about the 25th; he said he was going to Miami anyhow and he would come over here on the 25th. Q. What did he promise you to do? A. He promised that he would come here on the 25th and take up the note."

She further testified that she had $300 in cash when she went to Indiana and she intended to help Ed and knew he needed a loan and was trying to get it.

John Dalton Smith did not testify in the case.

Eddie B. Tidwell further testified that prior to the fire he tried to raise the money to pay off the mortgage on his residence through Mr. Ray Smith, secretary to the Arkansas Savings and Loan Association in Hot Springs, and offered him a $100 bonus to procure the loan. Smith, however, was unable to secure the loan for him.

Jack McKenzie, on behalf of appellants, testified that he was a special agent for the National Board of Fire Underwriters; that shortly after the fire he made an investigation as to the cause of it. He went to Hot Springs, and together with assistant chief, Brown, of the fire department, examined the house and they found that there had been a fire in the room where the pool room equipment was stored and there was paper at different places intermingled with this equipment. There had been a fire in the southeast corner of the upstairs bedroom and on the back porch back of the kitchen. There was a disconnected unused hot water heater on top of which was a pasteboard box containing excelsior and other waste material and there had been a fire there. Upon inquiry they found there was no wearing apparel in the house, no bed clothing or bed linens of any kind. He has been investigating fires for more than eight years. The fire downstairs was confined to the dining room where the pool room equipment was stored and maybe the room just east of it. The physical facts disclose that the fire did not go through the floor to the rooms above, in the southeast corner of the southeast bedroom upstairs, and that that fire did not communicate with the fire downstairs in the dining room. There were

two separate and distinct fires in the house, in his opinion. The fire had burned through the ceiling of the downstairs room but not through the floor of the room just above. The only way the fire could have gone downstairs would be to go down the stairway and *vice versa*. The stairway is smoked or charred very slightly. Witness was with the State Fire Marshal's office in Oklahoma for about seven years before coming to Arkansas.

Weldon Rasberry, Commissioner of Public Safety of the City of Hot Springs, testified that he examined the property with witness McKenzie the next day after the fire. They found paper had been stuffed in and around the pool room equipment on the ground floor and the back room on the second floor had been burned. There were at least two separate fires, in his opinion, because they could find nothing that would point to the fire upstairs being caused by the burning downstairs. He made certain pictures of the fire which were introduced in evidence. There was paper stuffed in under the pool tables which were in the center of the dining room. The upstairs room that was burned so badly is not directly over the dining room. Clothes closet was burned out, burned through the ceiling and side walls. Considerable charcoal was piled in one corner, he moved some of it clear to the floor, the linoleum was still on the floor and the top of it was not burned. The fire did not burn up through the floor nor down through the linoleum, and if there was a fire through there it came from the bottom but he didn't see any holes there.

M. S. Patton, witness for appellees, testified he was a building contractor in Hot Springs; that he had been so engaged for thirty or thirty-five years; estimated that it would take $3,844.70 to replace the fire damage to the building and that it would cost between $5,500 and $6,000 to replace it entirely.

Ray Smith testified for appellants that he had been in the real estate business in Hot Springs for twenty-five years and knew values there. Tidwell came to him to get a loan on the residence in question on April 1, 1938. Tidwell wanted $750, stating that he owed Mrs.

Young $650 and offered to pay Smith a $100 bonus to procure the loan for him. Smith tried to procure the loan, but failed. Tidwell advanced Smith $25 on the proposed bonus but on April 5th he came to Smith and Smith returned the $25 to Tidwell because "He said he had made some other arrangements. He had procured a loan some place else. Q. On the 10th or 11th of the month along there, did he come back? A. It was after the 5th, and several days before the fire, because I remember the fire occurred sometime after that. Q. Did you look at the property at that time? A. I only drove by in the car; I didn't get out to go through it. Q. Do you know the property, A. Reasonably well, yes."

Mary Tidwell, wife of Eddie B. Tidwell, and one of the appellees, testified relative to what use Tidwell made of this $25 repaid to him by Smith, in the following language: "A. Tidwell had given me $25 and I paid— Q. Was that the $25 he took down from Mr. Ray Smith. A. Yes, sir, and I went down and paid for it myself. Q. You took that $25 that he gave you that he drew down from Ray Smith and you went down and paid it for insurance, is that right? A. Yes, sir. Q. How much did that cost you? A. It cost twenty-three dollars and something; I gave him $25 and he gave me some change back, I think about $23.50."

Ray Smith further testified in his opinion that Tidwell's residence in April, 1938, had a fair cash market value of $1,000, that the house was out of plumb, was irregularly built, and doubted if it would be sold for $1,250 on terms. It was stucco on chicken wire, not very well put up. He estimated the value of the furniture to replace in any room that he saw, except the front room, at $25 per room.

Riley Brown, on behalf of appellants, testified that he was assistant chief of the fire department of Hot Springs and had been for twenty-seven years. He was in charge of the fire in question and on arrival found the house a roaring furnace downstairs. Made an investigation next day with Mr. McKenzie and the best he could tell the fire was in a back room against the mountain. There was a little winding narrow stairway be-

tween the first and second floors. The fire upstairs was off in the back end of the house. They found an old torn up box of excelsior and a five-gallon empty coal oil can on the back porch. There was no odor of coal oil. The worst patch was downstairs; upstairs the worst was right in the back. Upstairs fire was in a room over the room downstairs that had the pool tables in it. He would call it one fire because he thought the fire from downstairs went upstairs; fire could have gone up through the cracks. He had made a statement that he believed the fire had been set "and I still believe it was set for the insurance." After the fire he couldn't find a sheet on the bed. No bed linen at all.

C. C. Disheroon testified that there was $2,000 fire insurance written on the Tidwell residence on April 12, 1938, through a Mr. Dodson, in the Westchester Fire Insurance Company. Tidwell paid witness the premium, however, on this policy on the day it was written in the sum of $23.40.

Rawleigh East, witness for appellants, testified that he lived next to the Tidwell residence and was at home sick the night of the fire and had been up back and forth to the bathroom and heard a noise like some one walking on Tidwell's porch, but went back to bed. About an hour later he was up and heard something drop, but thought it was on his front porch, heard it again in about five minutes. When he came out of the bathroom he distinctly heard a roaring noise, saw the flames coming through the windows of the Tidwell house. This was about 1:30 a. m. After about fifteen minutes he came out on the porch and saw flames coming out of the windows upstairs. He thought he heard Tidwell or some of his roomers coming in from work. It was about an hour after he heard the noise on the porch until he saw the fire. The fire appeared to be bigger downstairs than upstairs.

There was other testimony on behalf of appellees corroborative of their testimony that the value of the residence, pool room equipment and household goods was in excess of the amount of the insurance carried. There was likewise testimony on the part of appellants

placing the value of the residence and its contents at a value less than the total amount of insurance carried. We think it would serve no useful purpose to set out further the conflicting testimony as to these values since it would unduly extend this opinion.

To sum up the testimony, we think the following facts stand out as practically undisputed: The three policies of insurance in question were procured by appellees within a few days of the fire in question and prior to their procurement the property was uninsured. All of this property had been under mortgage for several years. The mortgages on the personal property had been foreclosed and title subject to vest in the mortgage-holders. The mortgage on the residence was in process of foreclosure. Tidwell tried diligently to secure a loan to pay off the mortgage on the residence, even to the point of offering a $100 bonus, but was unsuccessful. The $25 advanced by Tidwell to Smith on the bonus, at the request of Tidwell, was returned to him and he immediately turned it over to his wife, Mary Tidwell, who used it to secure the $2,000 policy on the residence just seven days before the fire. Just a few days before the fire the residence had been practically divested of all sheets, linens, and bed covering and most of the wearing apparel of appellees. The firemen on reaching the fire found that it had gained more headway than usual on such fire calls. There had been a fire upstairs and one downstairs. Old newspapers were found stuffed under and about the pool tables in the dining room where the fire occurred downstairs.

Upon careful consideration of this testimony and other facts and circumstances of probative value as presented in this record, we have reached the conclusion that a finding that the fire was not caused by Tidwell is contrary to a preponderance of the testimony.

We conclude, therefore, that the decree must be reversed and as to appellant, Franklin Fire Insurance Company, it is dismissed here, but as to appellant, Westchester Fire Insurance Company, the decree is reversed and remanded with directions to foreclose the mortgage

executed by Tidwell and wife to Dr. J. K. Young, deceased, and assigned by the administratrix of his estate to the Westchester Fire Insurance Company.