G. L. **BOONE**, Plaintiff-Appellant,

v.

**ROYAL INDEMNITY COMPANY**, Defendant-Appellee.

No. 71–1469.

United States Court of Appeals, Tenth Circuit.

May 3, 1972.

Rehearing Denied June 2, 1972.

Isaac Mellman, Denver, Colo., for plaintiff-appellant.

Sam F. Lowe, Jr., of Smith, Ringel, Kohler, Martin & Lowe, Atlanta, Ga. (William H. Hazlitt of Weller, Friedrich, Hickisch & Hazlitt, Denver, Colo., on the brief), for defendant-appellee.

Before PICKETT, HILL and DOYLE, Circuit Judges.

WILLIAM E. DOYLE, Circuit Judge.

In this case the plaintiff Boone sought to recover on a fire insurance policy which had been issued on a business property located in Atlanta, Georgia, which property was destroyed by an incendiary fire. The suit was first filed in the state court and was removed to United States District Court for the District of Colorado.

The policy covered the plant and equipment of Hickory Manor Portion Foods, Inc., of Georgia, which company was substantially (80 percent of the stock) owned by the plaintiff, G. L. Boone of Denver, Colorado. Some months before the fire there was an assignment of the policy from Hickory Manor to G. L. Boone, which occurrence explains his appearance as the sole plaintiff. The amount sought was $260,243.00. The insurance company interposed the defense of arson caused, procured or ratified by the plaintiff. Following submission of the case to a jury a defendant's verdict was returned in favor of the Royal Indemnity Company.

On this appeal reversal is sought, first, on the contention of appellant that the evidence was insufficient to support the jury's verdict; secondly, on his claim that the trial court was incorrect in dealing with burden of proof on the arson defense; and, further, the reception of some hearsay evidence.

G. L. Boone was shown by the evidence to have been engaged in the barbeque frozen food processing and merchandising business. He had plants in Denver and Atlanta and was engaged in other unrelated business ventures. The plaintiff's brother, J. K. Boone, was the manager and part owner of the Atlanta plant and was also at the time in question the sole employee of that business. Plaintiff's wife was secretary of both the Colorado and the Georgia corporations.

The evidence showed that at the time of the fire plaintiff was plagued with severe financial problems. Neither the Denver nor the Atlanta plants had shown any net profit for several years. The Atlanta company was in debt to a local bank in the amount of $140,000.00 on the date of the fire (January 4, 1970). During this period the Atlanta plant was substantially idle, and the processing equipment located there had not been used for over a year.[1] Plaintiff's other businesses were also in poor financial condition. However, just prior to the fire one David Barnes had invested $10,000.00 in the frozen food operations. Notwithstanding this fact, and the further fact that other assets had been sold during the summer of 1969, the evidence showed that plaintiff continued to be in very poor financial condition through 1969. He had tried without success to sell the Atlanta property

---

1. The Atlanta market requirements were satisfied by shipments of frozen meat from Denver. Thus the Georgia facility became in essence a warehouse.

and had renegotiated the Atlanta bank loans twice and had been unable to stay current on the payment of interest on these loans. However, soon after the destruction of the building by fire, the defendant insurance company paid plaintiff's $140,000.00 debt to the bank.

There was no dispute at trial concerning the cause of the fire. Arson was conceded to have been the source. Several pounds of explosive substance had been placed in the building alongside a gas main between the storage and freezing rooms. An explosion preceded the fire which destroyed most of the building and a substantial part of the equipment including all the frozen products, all of which had been covered by the policy.

Occurrences on the day of the fire were shown. On Saturday a truck driver had been scheduled to load 10,000 pounds of frozen meat for transfer back to Denver. Plaintiff had been unable to sell this in the Atlanta market. The driver was unable to make the pickup on Saturday due to repairs on his vehicle. When he called J. K. Boone on Sunday morning and offered to load up that day, he was told to postpone it until Monday morning.

On the Sunday just mentioned, J. K. Boone went to the plant early and talked to his brother by phone. He then went outside to wait for David Barnes and Ted Higgins who were scheduled to appear. Barnes, as mentioned above, had invested $10,000.00 in the business and had hired Higgins. The evidence showed that when Boone went outside to wait for Barnes and Higgins the door closed and locked, and he was unable to re-enter because of not having a key. He testified that he had left the key on a desk inside the building and did not have another one. After his arrival Barnes suggested that they break in, but Boone told him that to do so would activate the alarm at the central office of the protection system. The truth was that this service had been discontinued some weeks before. Boone, in the company of Barnes and Higgins, drove to his house in search of another key, notwithstanding that he knew that he did not have one. After this they drove to a motel for dinner, following which they proceeded to Barnes' room in the motel where Boone received a message that G. L. Boone had called from the Denver airport. J. K. Boone left Barnes' room and crossed the street to another motel in order to return this call. It was then 7:30 p. m. Atlanta time and the explosion occurred within the hour. After this incident J. K. Boone, who was still in the company of Barnes and Higgins, sought to call G. L. Boone in Denver, notwithstanding that he knew that his brother was en route to Las Vegas.

G. L. Boone registered at a hotel in Las Vegas and about 3:00 a. m. he awakened, according to his testimony, to discover that $6,000.00 had been taken from his suit coat or wallet.[2]

Both J. K. and G. L. Boone denied any knowledge of the arson. J. K. Boone testified that the reason for his unusual behavior on Sunday was his irritation with David Barnes, growing out of his dislike for Barnes. G. L. Boone's explanation for having $6,000.00 on his person was that he was en route to Los Angeles to satisfy a loan made to him in the amount of $2,500.00 by a female acquaintance six months previously.

J. K. Boone, who was the agent of plaintiff, had exclusive control of the premises and had the only keys, was well aware of the design of the building and was in a position whereby he could have arranged the fire if he was not directly accountable for it. Some doubt exists as to whether he was directly involved, but his control of the keys and the evidence that the job was done by a professional give rise to an inference that he had some part in it. As to plaintiff, there

---

**2.** Boone gave conflicting statements as to whether this money was in his wallet or was in envelopes in suit coat pockets. In any event, he reported the theft to the police and returned to Denver the next day.

was ample proof of motive and the unusual events which occurred on the Sunday when the explosion took place supported an inference that the plaintiff either caused or ratified the fire.

## I.

Arson cases are difficult to prove. The chance that there will be a motion picture of the arsonist in the act of setting the dynamite is most unlikely. The probability is that the evidence will be circumstantial as it is here. We have in the case at bar 1) arson unquestionably; 2) ample motive; and 3) unexplained surrounding, inculpating circumstances which are relatively strong.

■ It cannot be said that the evidence in support of the verdict is such that reasonable men could not have found for the defendant. See Hanover Fire Insurance Co. of New York v. Argo, 251 F.2d 80, 82 (5th Cir. 1958). The fact that the evidence is circumstantial does not militate against a verdict that the fire was incendiary in origin and was attributable to the insured so long as the evidence is substantial. See Jamaica Time Petroleum, Inc. v. Federal Insurance Company, 366 F.2d 156, 157 (10th Cir. 1966); cf. Baltimore American Ins. Co. v. Pecos Mercantile Co., 122 F.2d 143, 147, 148 (10th Cir. 1941) (in that case, unlike the instant one, the incendiary origin of the fire was not shown).

## II.

Plaintiff next contends that the trial court erred in its instruction to the jury on burden of proof. On the issue of arson the court told the jury that since the matter was an affirmative defense the burden was on defendant to prove it by a preponderance of the evidence. Plaintiff's position is that the instruction should have required establishing of the arson by clear and convincing evidence.

■■ Federal courts follow the conflict of laws rules prevailing in the forum states. Klaxon Co. v. Stentor Electric Mfg. Co., 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). Burden of proof in diversity actions is a matter which is governed by state law. See Sampson v. Channell, 110 F.2d 754 (1st Cir. 1940).

We have been unable to find a decision of the Colorado Supreme Court holding that Colorado law requires the jury to be instructed that there must be clear and convincing proof in order to satisfy the preponderance of the evidence standard in a civil arson case such as this.

This court in Connecticut Fire Insurance Company v. Fox, 361 F.2d 1, 6 (10th Cir. 1966) held that use of the additional words "clear and convincing" does not place any greater burden than that which is imposed by preponderance of the evidence. On this the court said:

> * * * The words clear and convincing or clear and satisfactory are often used as the standard of proof in such an instruction and can hardly be considered a larger burden than preponderance of the evidence. In any event, prior to the instruction complained of the court told the jury that the proof on the issue must be by a preponderance of the evidence. Additionally, in submitting the interrogatories to the jury, the court again stated only that the proof need be by a preponderance of the evidence. Instructions must be considered as a whole and not piecemeal. * * *[3]
> 361 F.2d at 6.

■■ There is no indication in the cases as to the Colorado conflicts rule, but presumably Colorado would follow the general rule which considers burden of proof to be subject to the law of the forum. See A.L.I. Restatement Conflict

3. Thus the burden of proof test—preponderance of the evidence—applicable to all civil cases does not change in a circumstantial case. When the jury is admonished that the evidence must be clear and convincing the jurors are merely being told to

of Law 2d § 133.[4] In the absence of a showing that Colorado requires in an arson case that the jury be instructed not only on preponderance of the evidence but also on the requirement that the evidence be clear and convincing, we see no merit in plaintiff's argument. The trial court in the instant case articulated the applicable standard insofar as it is apparent.

### III.

■ Appellant's final contention is that the court erred in receiving alleged hearsay evidence given by Arson Investigator Waits of the Atlanta Fire Department. The investigator summarized the statement of one Joe Venolla who was not present at the trial. The statement was part of a written report which had been prepared by the Atlanta Fire Department. Venolla had said that the $6,000.00 lost by G. L. Boone was actually a payoff to the arsonist. He had also quoted G. L. Boone as saying that following the Atlanta fire he wished that the Denver plant would also burn down. This evidence came out on redirect examination after plaintiff's counsel (not his present lawyer on this appeal) had asked Lt. Waits on cross-examination whether he had received any rumors as to the identity of the arsonist. Waits replied by mentioning the Venolla statement. Plaintiff's counsel, unsatisfied, asked whether the authorities had received any information at all as to who set off the explosion and fire. Waits responded that they had no physical evidence that they could introduce. The trial court ruled that this line of inquiry opened up testimony as to the substance

of the rumors, the theory being that the plaintiff by creating an inference of non-implication could not close the door so as to leave the inference that neither the fire nor police departments of Atlanta had been able to connect the plaintiff or his brother with the arson. This matter was subject to the discretion of the trial court and under the circumstances we are not disposed to disturb this ruling. See McBoyle v. United States, 43 F.2d 273, 275 (10th Cir. 1930), rev'd on other grounds 283 U.S. 25, 51 S.Ct. 340, 75 L.Ed. 816 (1931).

The judgment is affirmed.

be guarded and careful in view of the nature of the case and the character of the evidence.

4. Absent a Georgia judicial pronouncement or statutory law tying a certain standard of proof as a matter of policy to the affirmative defense of arson, we hold that the Colorado law applies. As we have indicated above, the general rule is that there need be only an instruction as to preponderance of the evidence, and this

is the law that Colorado would apply. In reality there is no practical difference between the Colorado and Georgia law since the latter requires only a preponderance of the evidence instruction and the burden in both states as to arson is on the insurer once the assured has made out a prima facie case for recovery. See Hanover Fire Insurance Co. of New York v. Argo, 251 F.2d 80, 81 (5th Cir. 1958).