Floyd E. RANEY, Appellee,

v.

HONEYWELL, INC., a corporation,
Appellant.

No. 75–1972.

United States Court of Appeals,
Eighth Circuit.

Submitted May 13, 1976.

Decided Aug. 16, 1976.

Rehearing and Rehearing En Banc
Denied Sept. 10, 1976.

H. Richard Smith, Des Moines, Iowa, for appellant; Richard G. Santi of Ahlers, Cooney, Dorweiler, Haynie & Smith, Des Moines, Iowa, on brief.

Arthur H. Johnson, Fort Dodge, Iowa, for appellee; Thomas J. Bice of Johnson, Burnquist, Erb, Latham & Gibb, Fort Dodge, Iowa, on brief.

Before HEANEY and HENLEY, Circuit Judges, and SCHATZ, District Judge.*

SCHATZ, District Judge.

This is an appeal from a jury verdict in favor of the plaintiff, Floyd E. Raney, against the defendant, Honeywell, Inc. The plaintiff was severely injured when LP gas fumes from a furnace exploded. The plaintiff filed a diversity action against Honeywell, the manufacturer of the gas control valve of the furnace, basing his claim on negligence, breach of warranty

---

* The Honorable Albert G. Schatz, United States District Judge for the District of Nebraska, sitting by designation.

and strict liability. The trial court[1] submitted the issue of strict liability to the jury. The jury returned a verdict in favor of the plaintiff for $540,000.

The plaintiff, an employee of a plumbing and heating business, was working in a vacant house in Livermore, Iowa, on April 17, 1971, when he was injured. The house in question had been used as rental property and had been vacant for some time. On the day before the explosion, workmen were cleaning and painting the house in preparation for a new tenant. About 9 p. m. that night the workmen turned on the gas, which was supplied from an LP tank outside the house, to light the stove. When the workmen left that night they did not turn off the gas from the outside tank. Meanwhile, the plaintiff had been called in to repair a leaking water pipe in the basement of the house and arrived early on the morning of the next day and prepared to solder the water pipe. Because of odors from the fresh paint and some spoiled food, he did not smell the gas, which had been leaking from the furnace, also located in the basement. The gas vapors exploded when the plaintiff lit his propane torch to solder the water pipe, severely burning him. The cause of the explosion was determined to be the accumulation of propane gas which was allowed to escape through the gas control valve of the furnace.

The case was submitted to the jury on the issue of whether the gas control valve had a design defect. The trial judge overruled the defendant's motion for a directed verdict and for judgment n. o. v.

*Sufficiency of the Evidence.*

The defendant first asserts as error that there was insufficient evidence to submit the strict liability issue of a defect in design to the jury.

█ The Supreme Court of Iowa has adopted the doctrine of strict liability in tort as expressed by the Restatement (Second) of Torts, § 402A. *Hawkeye-Secur-*

*ity Insurance Co. v. Ford Motor Co.,* 174 N.W.2d 672 (Iowa 1970). Under those principles a manufacturer may be held liable for injuries to other persons if, among other things, the product was in a defective condition and unreasonably dangerous and that defect caused the injuries. If these conditions are satisfied, liability is imposed regardless of the degree of care exercised by the manufacturer. *Kleve v. General Motors Corp.,* 210 N.W.2d 568, 571 (Iowa 1973). The design of a product may make that product defective and unreasonably dangerous. *Passwaters v. General Motors Corp.,* 454 F.2d 1270 (8th Cir. 1974); *Schuh v. Fox River Tractor Co.,* 63 Wis.2d 728, 218 N.W.2d 279 (1974); *Friedrich v. Anderson,* 191 Neb. 724, 217 N.W.2d 831 (1974). The product must be designed so that it is reasonably safe for uses that are foreseeably probable, whether or not those uses were intended by the manufacturer. *Melia v. Ford Motor Co.,* 534 F.2d 795 (8th Cir. 1976); *Hoppe v. Midwest Conveyor Co.,* 485 F.2d 1196 (8th Cir. 1973); *Polk v. Ford Motor Co.,* 529 F.2d 259 (8th Cir. 1976) (*en banc*).

The gas control valve in question was equipped with a safety device which would stop the flow of gas when the pilot light was off. This device could be overridden by pushing down the knob on the valve and turning it to the "pilot" position. While the knob was in the depressed position gas would flow so that the pilot could be lit. After the pilot was lit, the normal operation called for removing the valve from the depressed position and turning it to the "on" position, thus engaging the safety device again. In order to prevent the knob from being depressed and being placed in the "on" position, which allowed gas to escape if the pilot light was not on, the defendant had placed small metal protrusions or mechanical stops under the knob to guide it in its proper operation. When the valve in question was inspected after the explosion, it was depressed in the "on" position, thus

---

1. The Honorable William C. Hanson, United States District Judge for the Northern District of Iowa.

allowing gas to escape when the pilot light was not on. The mechanical stops had been bent so that the knob could be placed in the "on" position and would remain in this position. There was no evidence that tools were used to force the knob into that position, a valid inference arising that an unknown individual had turned the knob to that position using only his hands.

The gas escaped from the valve because the design of the valve permitted it to be turned to a position which allowed the safety device to be overridden. There is no question that this design created a risk of harm. The question is whether this risk was "unreasonable". The answer requires a balancing of the probability and seriousness of harm against the costs of taking precautions. *Cooley v. Quick Supply Co.*, 221 N.W.2d 763, 769 (Iowa 1974). *See also, Melia v. Ford Motor Co., supra,* 534 F.2d 795. Relevant factors to be considered include the availability of alternative designs, the cost and feasibility of adopting alternative designs, and the frequency or infrequency of injury resulting from the design. *Hoppe v. Midwest Conveyor Co., supra,* 485 F.2d at 1202. The plaintiff's expert witness testified that this danger could have been reduced or eliminated by one of three rather simple design changes in the valve: stronger mechanical stops, a double mechanical stop, a plastic knob which would break if too much force were applied to turn the knob while still in a depressed position.

The test for evaluating the sufficiency of the evidence is as follows:

[I]n passing upon the motion for judgment, the trial court and this court are (1) to consider the evidence in the light most favorable to the plaintiffs as the parties prevailing with the jury; (2) to assume that all conflicts in the evidence were resolved by the jury in favor of the plaintiffs; (3) to assume as proved all facts which plaintiffs' evidence tends to prove; (4) to give the plaintiffs the benefit of all favorable inferences which may reasonably be drawn from the facts proved; and (5) to deny the motion if, reviewing

the evidence in this light, reasonable men could differ as to the conclusions to be drawn from it.

*Hanson v. Ford Motor Co.*, 278 F.2d 586, 596 (8th Cir. 1960).

From a careful review of the record in this case, we are satisfied that there was sufficient evidence to permit a jury to decide whether the gas control valve had a defect in design.

*Evidentiary Rulings.*

The defendant's next assignments of error relate to the alleged erroneous admission of evidence. The defendant first complains of the evidence relating to the presence of a loose screw in the gas control valve. After the explosion, it was noted that the chamber of the valve contained a loose screw which rattled when the valve was moved or shaken. There was no evidence that the loose screw had anything to do with the explosion. The plaintiff's expert witness testified before the jury that the presence of the loose screw was unrelated to the cause of the explosion. The defendant had requested the screw be removed before the valve was offered in evidence or shown to the jury. The trial judge admitted the valve containing the screw but instructed the jury that the valve was admitted to show its condition at the time of the explosion and that the jury was to disregard the loose screw because it had nothing to do with the cause of the explosion. Here, the trial court was called upon to exercise its discretion. *Control Data Corp. v. International Business Machines Corp.*, 421 F.2d 323, 326 (8th Cir. 1970). Clearly it was proper to admit the gas control valve in the condition in which it was found. *E. g., Langford v. Chrysler Motors Corp.*, 513 F.2d 1121 (2d Cir. 1975); *McCormick on Evidence*, § 212 (2d Ed. 1972); 29 Am.Jur.2d Evidence § 774. The trial judge committed no abuse of discretion when he admitted the valve for this limited purpose and when he so instructed the jury. Rule 105, Federal Rules of Evidence. The defendant, however, argues that the jury verdict resulted from the prejudice from

the loose screw rather than from a design defect. This argument asks us to speculate that the jury disregarded the evidence and the clear admonition given by the trial court. This we cannot do. *Baltimore and Ohio Railroad v. Felgenhauer,* 168 F.2d 12, 17 (8th Cir. 1948).

■ The defendant next complains of the admission of certain evidence concerning a prior case involving a Honeywell valve. The plaintiff's expert witness, Professor Nelson, testified on direct examination that he had been called upon in the past to examine and evaluate a number of gas control valves by a number of clients, including Honeywell. On cross-examination, the defendant's attorney, referring to the witness's prior experience in the field of gas explosion, asked which company's valves caused the most trouble in this regard. The witness named a company other than Honeywell. On re-direct examination the witness was permitted to testify over objection that he also had experience with a Honeywell valve of similar design that caused a gas explosion. The defendant asserts prejudicial error in the admission of this testimony. By his cross-examination on the issue of valves manufactured by other companies, the defendant's attorney clearly tried to leave the impression with the jury that Honeywell valves were safer than valves made by other companies. Since the defendant had raised this issue, it was clearly within the discretion of the trial court to allow the plaintiff to attempt to rebut that impression. *See Boone v. Royal Indemnity Co.,* 460 F.2d 26 (10th Cir. 1972); *Louis v. United States,* 369 F.2d 263 (7th Cir. 1966); *United States v. Gorman,* 355 F.2d 151 (2d Cir. 1965), *cert. denied,* 384 U.S. 1024, 86 S.Ct. 1962, 16 L.Ed.2d 1027 (1966); *London v. Standard Oil Co.,* 417 F.2d 820 (9th Cir. 1969); *McCormick on Evidence* §§ 32, 57 (2d Ed. 1972). We note also that the defendant's attorney succeeded in establishing on re-cross-examination the differences between the valve that injured Mr. Raney and the valve referred to by the plaintiff's expert.

■ The defendant argues that the trial court erred in allowing the jury to hear and consider certain evidence regarding the plaintiff's impairment of future earning capacity. Under the law of Iowa the plaintiff is entitled to recover for any impairment of future earning capacity. *Schnebly v. Baker,* 217 N.W.2d 708, 726 (Iowa 1974). This element of damages compensates the plaintiff for his reduced ability to earn. The plaintiff's impairment of earning capacity is the difference between the value of his future services if he had not been injured and the value of his future services as an injured person. *Anthes v. Anthes,* 258 Iowa 260, 139 N.W.2d 201, 208 (1965).

■ To prove impairment of earning capacity the plaintiff presented testimony from an economist who calculated the value of the plaintiff's future services if he had not been injured, based upon a projection of median income for a group which included the plaintiff. The defendant argues that this projection was inadmissible because plaintiff's actual earnings before his injury were below the median income level which was used to calculate his future earnings. This argument, however, overlooks the principle that the plaintiff is to be compensated for the reduction of his *capacity* to earn income. The plaintiff's actual earnings are only one element to be considered by the jury with all of the other facts and circumstances bearing on his capacity to earn income. *Von Tersch v. Ahrendsen,* 251 Iowa 115, 99 N.W.2d 287 (1959). The Iowa Supreme Court has approved the use of projected income as an aid to the jury's determination of impairment of earning capacity. *Schmitt v. Jenkins Truck Lines, Inc.,* 170 N.W.2d 632 (Iowa 1969); *Von Tersch v. Ahrendsen, supra.* The fact that the plaintiff's actual earnings were below the income level on which the economist's projection was based went to the weight of the projection rather than its admissibility.

■ In computing the value of the plaintiff's services if he had not been injured, the economist relied upon an inflationary rate and a discount rate of six per cent and the two factors were used to offset each

other. Relying on *Johnson v. Serra*, 521 F.2d 1289 (8th Cir. 1975), and *Riha v. Jasper Blackburn Corp.*, 516 F.2d 840 (8th Cir. 1975), the defendant argues that evidence of inflation should not have been presented to the jury. In those cases this Court held that evidence of future inflation was speculative and, therefore, inadmissible. However, those cases which were based on state law which did not permit such evidence are inapplicable in the instant case. Iowa law permits evidence of inflation to be considered by the jury in determining the diminution in the plaintiff's earning capacity. *Schnebly v. Baker, supra. See Riha v. Jasper Blackburn Corp., supra*, 516 F.2d at 844. The trial court, therefore, properly admitted the testimony in evidence regarding the inflationary factor.

*Jury Instructions.*

The last assignments of error relate to the trial court's failure to give certain instructions requested by the defendant. The defendant requested an instruction that a manufacturer was not required to design the safest possible valve or one as safe as those produced by other manufacturers. The trial court instructed the jury:

INSTRUCTION NO. 10: The manufacturer of gas control valves and their parts is not a guarantor that nobody will get hurt by the product it designs. All that the manufacturer is required to do is design and manufacture a product which is free from defective and unreasonably dangerous conditions.

INSTRUCTION NO. 12: You have been instructed that in order for the plaintiff to recover from the defendant under the doctrine of strict liability, the plaintiff must establish, among other things, that the gas control valve was defectively designed so as to be unreasonably dangerous. In this connection, you are instructed that the gas control valve design used to manufacture the valve is unreasonably

dangerous if it is dangerous to an extent beyond which would be contemplated or observed and appreciated by purchasers and users of the gas control valve who purchase and use it with the ordinary knowledge common to the community as to its characteristics. In considering whether the design of this valve is unreasonably dangerous, you may take into account alternative forms of design that were available at the time of the valve's design, and among other things, the knowledge common to those in the industry, the defendant's expertise, the dangers involved and the knowledge that was available to the defendant, Honeywell, Inc.

When these instructions are read together, it is clear that the defendant was not required to design and build an absolutely fool-proof valve. The jury could find for the plaintiff only if they found the valve was unreasonably dangerous, as defined, because of the defect in design.[2] The instructions properly stated the Iowa law. *Kleve v. General Motors, supra*, 210 N.W.2d at 570–71.

Further, there was evidence introduced by the defendant that the valve met certain safety standards relating to gas valves. The defendant requested, and the judge refused, the following instruction be given to the jury.

Evidence has been introduced pertaining to the standards applicable to the residential control gas valve at the time the valve in question was manufactured. In determining whether the Honeywell Corporation exercised reasonable care in the design, manufacture and assembly of its product, you may consider the standards applicable to the industry at the time of manufacture as evidence of the standard of care imposed upon the defendant. If you find that the Honeywell Corporation followed the standards generally applica-

2. The defendant also alleges error because the trial court refused its instruction that the reasonableness of the design should be considered as of the date the valve was designed. Instruction No. 12 given by the Court sets out various factors to be considered in deciding if the valve was unreasonably dangerous. It is clear that the jury was to assess these factors as of the date the valve was designed, which is substantially what the defendant requested.

ble in the industry at the time, you may consider that fact as evidence of due care on its part and as evidence that it was not negligent or otherwise responsible.

This instruction was properly refused. The last two sentences hold the defendant to a standard of reasonable care in designing the valve, and provided that Honeywell could not be held liable unless it was found to be negligent. However, under Iowa law concerning strict liability in tort, the plaintiff is not required to prove negligence and the defendant's liability is not dependent upon its degree of care.

> It is further understood that under the strict liability in tort doctrine, the party placing a defective product in the stream of commerce may be liable regardless of care exercised in the production thereof. Stated otherwise, strict liability in tort is not predicated on negligence.

> *Kleve v. General Motors Corp.*, supra, 210 N.W.2d at 571.

The requested instruction would have misled or confused the jury as to the basis for the defendant's liability. We note that under Instruction No. 12 given by the court, the jury was allowed to consider the knowledge common to those in the industry and the knowledge available to the defendant in deciding whether the design was unreasonably dangerous. Under that instruction the jury was informed that they could take into account the evidence of the safety standards which the defendant wished to be considered.

The judgment is affirmed.