**Jeffrey W. TAENZLER, Appellee,**

v.

**BURLINGTON NORTHERN, a corporation, Appellant.**

**No. 79–1242.**

United States Court of Appeals, Eighth Circuit.

Submitted Sept. 13, 1979.

Decided Dec. 19, 1979.

Richard A. Knudsen, Knudsen, Berkheimer, Beam, Richardson & Endacott, Lincoln, Neb., argued, James A. Snowden and Robert A. Cannon, Lincoln, Neb., on brief, for appellant.

Daniel G. Dolan, Dolan, Dinsmore & Davis, Omaha, Neb., for appellee.

Before STEPHENSON and McMILLIAN, Circuit Judges, and HANSON,* Senior District Judge.

McMILLIAN, Circuit Judge.

Appellant Burlington Northern, Inc., appeals from district court[1] orders entering judgment against appellant and denying appellant's motion for a new trial.[2] Appellee Jeffrey Taenzler brought this claim for damages under the Federal Employers' Liability Act (FELA), 45 U.S.C. § 51, *et seq.*, against appellant, claiming that appellant's negligence caused appellee to lose his leg in a train coupling accident. After a trial in the district court, a jury returned a general verdict awarding appellee $232,255.00, and judgment was entered accordingly. For the reasons stated below, we affirm.

■ At issue in this case is evidence concerning the part of the damage award relating to lost earning capacity. Earning capacity means the potential for earning money in the future, which is not necessarily based on the amount of money being earned at the time of the injury. The appropriate measure of damages in this kind of case is not the total amount of future earnings projected to be lost but the present value of that sum. *Chesapeake & Ohio R. R. v. Kelly*, 241 U.S. 485, 36 S.Ct. 630, 60 L.Ed. 1117 (1916); *Beanland v. Chicago, Rock Island & Pacific R. R.*, 480 F.2d 109 (8th Cir. 1973).

■ Appellant argues that the trial court erred in admitting expert testimony by an economist,[3] Dr. Jerome Sherman. Dr. Sherman estimated the amount of future earning capacity lost by Taenzler by a two-step process. First, he predicted the pay Taenzler would lose due to the loss of his leg each year for the remainder of his expected work life. After the accident, Taenzler had entered a university seeking a college education which he hoped would enable him to obtain employment despite his handicap. Dr. Sherman therefore based his future earnings loss prediction on the assumptions that Taenzler would incur total loss of a brakeman's pay at 1977 levels during an anticipated four-year college program and that thereafter the loss of earnings would equal the difference between the 1977 pay levels of a brakeman and non-professional college graduate. On this basis Dr. Sherman estimated that Taenzler

---

* The Honorable William C. Hanson, United States Senior District Judge for the Southern District of Iowa, sitting by designation.

1. The Honorable Robert V. Denney, United States District Judge for the District of Nebraska.

2. *Taenzler v. Burlington Northern, Inc.*, No. 78–0–19 (D.Neb. Jan. 12, 1979 and Jan. 26, 1979).

3. Appellant contends that expert testimony on the whole subject of lost earning capacity should not be admitted because such testimony gives the weight of expertise to projections of matters which are essentially uncertain or speculative. But the rule for admission of expert testimony does not depend on the relative certainty of the subject matter of testimony, but rather on the assistance given by the expert testimony to the trier of fact in understanding the evidence or determining a fact in issue. Fed. Rules of Evid. 702. Moreover, the relative weakness or strength of the factual underpinning of the expert's opinion goes to weight and credibility, rather than admissibility. *Polk v. Ford Motor Co.*, 529 F.2d 259, 271 (8th Cir.), *cert. denied*, 426 U.S. 907, 96 S.Ct. 2229, 48 L.Ed.2d 832 (1976). The trial court's decision to admit such expert testimony may not be overturned unless manifestly erroneous. *Salem v. United States Lines Co.*, 370 U.S. 31, 35, 82 S.Ct. 1119, 8 L.Ed.2d 313 (1962). We find no abuse of discretion by the trial court merely because it admitted testimony of an undisputedly qualified economist as an expert on the general question of the value of lost future earning capacity.

would lose a total of $321,810.00 [4] in earnings during the remainder of his expected work life.

Second, Dr. Sherman considered how to calculate the present value of this projected earnings loss. However, in Dr. Sherman's opinion, the present value of Taenzler's lost earning capacity equalled the full amount of future lost earnings. Dr. Sherman recognized in theory that the amount of lost future earnings should be adjusted to reflect the anticipated return on investment of the damage award. But annual increases in railroad employee's earnings had historically exceeded the annual return on a safe investment (*i. e.*, long-term U.S. Treasury bonds). Thus, Dr. Sherman concluded that, because the anticipated return on investment would counterbalance future wage increases, Taenzler's lost future earning capacity would equal the unadjusted amount of lost future earnings.

The trial court admitted his testimony regarding potential future pay increases; it refused, however, to permit further testimony by Dr. Sherman that his conclusion could alternatively be characterized as a projection of future inflation,[5] or loss of purchasing power. Appellant argues that even the testimony on future pay increases should have been excluded, because expert testimony on loss of earning capacity involving even indirectly an assumption as to future inflation is so speculative and conjectural that it is not admissible under the principles set forth in *Johnson v. Serra*, 521 F.2d 1289 (8th Cir. 1975), and *Riha v. Jasper Blackburn Corp.*, 516 F.2d 840 (8th Cir. 1975).[6] In our opinion, neither case supports appellant's view.

■ The likelihood of future pay increases is among the factors a court can consider in determining the propriety of a verdict in a FELA action. *See Grunenthal v. Long Island R. R.*, 393 U.S. 156, 160, 89 S.Ct. 331, 21 L.Ed.2d 309 (1968), *rev'g* 388 F.2d 480 (2d Cir.), *rev'g* 292 F.Supp. 813 (S.D.N.Y. 1967) (consideration by Supreme Court of probable future wage increases in upholding district court's determination of damages). As the district court noted in *Grunenthal*:

[C]onvincing testimony not refuted was offered at trial by plaintiff demonstrating the steady wage increases in recent time for work equivalent to that rendered by plaintiff, and the strong likelihood that similar increases would continue. It might very well follow, therefore, that the wage increases would offset the discount calculation.

---

**4.** The total of $321,810.00 in anticipated future lost earnings was the sum of the estimated earnings for Taenzler as a brakeman from his injury in late June 1976 until his projected graduation from college in 1981 ($95,672.00), and an annual amount ($5,951.00) representing the difference between his estimated earnings as a brakeman ($17,711.00) and as a non-professional college graduate ($11,760) for a projected work life of 38 years.

The verdict of $232,255.00 was somewhat smaller than Dr. Sherman's estimate of $321,-810.00 in damages. Appellant, however, points out that FELA cases such as this one are essentially comparative negligence actions. Appellant claimed at trial there was contributory negligence, and now contends that the general verdict leaves open the possibility that the jury may have reduced the damages by a factor for contributory negligence and increased the damages for future earnings increases.

**5.** Dr. Sherman did not define precisely what he meant by "inflation," but used the term interchangeably with the annual increase in the "Consumer Price Index." We assume the par-

ties mean by "inflation" the general concept of a decline in the purchasing power of money, however calculated.

In the unadmitted part of his testimony, Dr. Sherman expressed the opinion that changes in the rate of inflation would probably go in tandem with changes in the return on investment, specifically, interest rates available on certain U.S. Treasury bonds.

**6.** In cases where we have applied state law, we have held expert testimony directly predicting some future inflation rate admissible in this kind of case under Iowa law, *Raney v. Honeywell*, 540 F.2d 932 (8th Cir. 1976), but inadmissible under Nebraska law, *Riha v. Jasper Blackburn Corp., supra*, and under Minnesota law, *Johnson v. Serra, supra*. *But see Ossenfort v. Associated Milk Producers, Inc.*, 254 N.W.2d 672 (Minn.1977) (expert testimony predicting future inflation admissible). For a summary of the various rules in different jurisdictions, see Note, *Future Inflation, Prospective Damages, and the Circuit Courts*, 63 Va.L.Rev. 105 (1977).

292 F.Supp. at 815–16. There is little doubt, therefore, of the probative value of testimony concerning potential future pay increases.[7]

■ Because the evidence is relevant, it is admissible unless there is a reason to exclude it under some specific rule of evidence or other federal law. Fed.Rules of Evid. 401.[8] *See also United States v. 1,129.- 75 Acres of Land, More or Less in Cross and Poinsett Counties*, 473 F.2d 996, 999 (8th Cir. 1973). Appellant argues that Dr. Sherman's testimony should be excluded because its prejudicial impact outweighed its probative value. *See* Fed.Rules of Evid. 403. In appellant's view, the testimony on future wage increases was tantamount to testimony on future inflationary trends and it prejudiced appellant by placing before the jury, in the guise of expert analysis, conjecture on the future of the economy, which is an improper basis for decision under *Johnson v. Serra, supra,* and *Riha v. Jasper Blackburn Corp., supra.* Appellant's argument, however, rests on a misapprehension of the reasons that this court has refused to allow admission of expert testimony directly predicting a particular future inflation rate. This court has not required the trier of fact, in applying the federal law of damages

under FELA, to ignore the prospect of future inflation in determining damages for lost earning capacity. On the contrary, recognizing the compensatory purpose of damage awards under FELA and the significance of inflationary factors in setting just compensation, this court has indicated that it may be error for the trial court to instruct the jury *not* to consider the prospect of future inflation in determining damages.

> Ideally, the damage award should compensate appellant . . .. If a jury is not permitted to consider decreases in the purchasing power of money, appellant would be woefully damaged if inflation should continue at its present or any other substantial rate. Some consideration of probabilities is inevitable in any fair award of damages.

*Riha v. Jasper Blackburn Corp., supra,* 516 F.2d at 844–45, *citing with approval Bach v. Penn Central Transportation Co.,* 502 F.2d 1117, 1122–23 (6th Cir. 1974) (FELA); *Johnson v. Serra, supra,* 521 F.2d at 1296–97. *See also Beanland v. Chicago, Rock Island & Pacific R. R., supra,* 480 F.2d at 117 (Bright, J., concurring). Expert testimony involving some indirect consideration of anticipated future inflation suggests a proper, not an improper, basis for decision,[9]

---

7. "[T]he jury's estimate of loss from lessened earnings capacity in the future need not be based solely upon the wages which the plaintiff was earning at the time of his injury . . .." C. McCormick, Damages 300 (1935).

8. The federal Rules of Evidence apply in this case. *See Chesapeake & O. Ry. v. Kelly, supra,* 241 U.S. at 491, 36 S.Ct. 630.

9. The trend appears to be toward increasing consideration of inflation. *See, e. g., Steckler v. United States,* 549 F.2d 1372 (10th Cir. 1977); *United States v. English,* 521 F.2d 63 (9th Cir. 1975). Although both these cases were decided under the Federal Tort Claims Act, 28 U.S.C. § 2671 *et seq.,* and therefore applied state law, the courts used broad language referring generally to the need to consider inflation in this kind of case.

But see, e. g., *Johnson v. Penrod Drilling Co.,* 510 F.2d 234 (5th Cir.) (en banc), *cert. denied,* 423 U.S. 839, 96 S.Ct. 68, 46 L.Ed.2d 58 (1975) (setting forth Fifth Circuit rule that anticipated future inflationary trends are too speculative to be considered in awarding damages for future

lost earnings). The Fifth Circuit rule apparently recognizes that some prospective earnings increases should be considered, but stipulates that "plaintiff must bear the difficult burden of proving what portion of the increases would have been given other than as an automatic hedge against inflation." *Higginbotham v. Mobil Oil Co.,* 545 F.2d 422, 435 (5th Cir. 1977). We decline to follow this approach. It would place almost insurmountable obstacles in the way of compensating for probable future earnings increases, by forcing the plaintiff to prove absence of a factor that the court regards as too speculative to prove at all. Moreover, the distinction between a "hedge against inflation" and other pay increases may be more nominal than real, for example where employees trade off a fixed pay increase for a cost of living formula. Finally, this burden of proof would frequently be satisfied more easily by employees such as managers or professionals whose wages are set on an individual basis and who can thereby demonstrate merit or other basis for expecting pay increases, than by others such as operatives whose wages tend to be set on an across-the-board basis.

and thus would not be excluded as prejudicial under Rule 403. *See* Notes of Advisory Committee on Proposed Rules, Fed.Rules of Evid. 403 (reprinted in 28 U.S.C.A.).

■ Nevertheless, we have noted that it may be an abuse of discretion for the trial court to admit expert testimony predicting future inflation at *a specified rate* "not only because it is speculative and uncertain, but because it opens up a myriad of collateral and remote considerations." *Riha v. Jasper Blackburn Corp., supra*, 516 F.2d at 844 n.4. First, such testimony may present as an estimate a specific rate of future inflation more precise than present knowledge warrants. Such expert testimony may mislead rather than assist the trier of fact. *See* Fed.Rules of Evid. 702. In many cases a lay person's general knowledge of inflationary trends may be more helpful than "computations [which] suffer from what Mr. Justice Holmes, in another context, called '[t]he dangers of a delusive exactness.'" *Feldman v. Allegheny Airlines, Inc.*, 524 F.2d 384, 392 (2d Cir. 1975) (Friendly, J., concurring), *citing Truax v. Corrigan*, 257 U.S. 312, 342, 42 S.Ct. 124, 66 L.Ed. 254 (1921) (Holmes, J., dissenting).

Second, the application of a specific rate of inflation in a particular case may present a foreshortened picture that puts future earnings out of perspective. One obvious way to project future earnings is to increase present earnings by factoring in a percentage for inflation, compounded perhaps annually. *I. e.*, the projection held inadmissible in *Johnson v. Serra, supra*, 521 F.2d at 1294 n.8. But the projection may not include concomitant increases for countervailing effects of inflation such as higher rates of return on investment.[10] The resultant distortion may suggest an award for lost earning capacity so large that the present return is two or more times as large as the earnings of the victim at the time of the injury.[11] *Id.* Such testimony on future inflation makes an illusion of the compensatory purpose of the damage award.

A final consideration which has caused this court to disfavor expert testimony directly discussing future inflation is that such testimony tends to open up collateral matters which may create unmanageable trials. *Riha v. Jasper Blackburn Corp., supra*, 516 F.2d at 843, 844, n.4; *see also* Fed.Rules of Evid. 403. Prediction of the future inflation rate may require exploration of the expert's views on world finance or digressions on the validity of a particular economic theory. The tendency of such testimony to waste time and confuse the issues would often outweigh its probative value.

■ Expert testimony on future wage increases is not as likely to confuse the issues. In the instant case, Dr. Sherman testified about anticipated changes in earnings levels and future levels of return on investment. The trial court limited the expert testimony to future trends in earnings of a particular group of employees and thus avoided distortions likely from testimony overly specific as to a particular future earnings figure or excessively general as to the overall national inflation rate. Such an approach restricted the expert testimony in a way that would assist the jury while at the same time avoid misapplication. The treatment of this evidence avoided peripheral matters and any waste of time. We cannot say that this treatment was mani-

---

10. *See* note 5 *supra*.

11. In *Johnson v. Serra, supra*, the court, applying Minnesota law, found inadmissible expert testimony predicting a future earnings level so inflated that an award based on the prediction was likely to yield a return more than double the annual earnings of the plaintiff prior to his injury. Subsequently, however, the Supreme Court of Minnesota allowed expert testimony predicting a rate of future inflation, which the expert suggested should be used in determining the proper rate for discounting to present value an award for lost future earning capacity. *Ossenfort v. Associated Milk Producers, Inc., supra*, 254 N.W.2d at 683–84. The Minnesota court, however, recognized the additional reasons for exclusion of the evidence in cases like *Johnson v. Serra*, where an expert predicts a specific inflated value for future income. *But see Feldman v. Allegheny Airlines, Inc., supra*, 524 F.2d at 390 (Friendly, J., concurring) (questioning both these approaches). *See also* Comment, 1976 Wash.U.L.Q. 135 (criticizing the approach taken in the present case).

festly erroneous. *See Salem v. United States Lines Co., supra,* 370 U.S. at 35, 82 S.Ct. 1119.

At most, some confusion may have arisen because Dr. Sherman's testimony pictured future earnings increases and future return on investment as cancelling each other out in computation of the damage award. Although the jury may consider expected earnings increases, *Grunenthal v. Long Island R. R., supra,* 393 U.S. at 160, 89 S.Ct. 331, the jury also must discount an award for future earning capacity to its present value. *Chesapeake & Ohio R. R. v. Kelly, supra,* 241 U.S. 485, 36 S.Ct. 630, 60 L.Ed. 1117; *Beanland v. Chicago, Rock Island & Pacific R. R., supra,* 480 F.2d 109. The trial court in the present case thoroughly instructed the jury of its obligation to discount damages award to present value. This instruction seems to us adequate to dispose of any minimal possibility that Dr. Sherman's testimony might have improperly influenced the jury to ignore present value.

■ As a secondary ground for reversal, appellant contends that it was error for the trial court not to instruct the jury that a damage award would be tax free and not to admit evidence of the appropriate tax rate to adjust the damage award. However, as recognized by appellant, the position in this circuit is that such instructions are not required, and we have said any change in this position would be prospective only. *Raycraft v. Duluth, Missabe & Iron Range Ry.,* 472 F.2d 27 (8th Cir. 1973); *Rouse v. Chicago, Rock Island & Pacific R. R.,* 474 F.2d 1180 (8th Cir. 1973). *See generally Chevron Oil Co. v. Huson,* 404 U.S. 97, 105–09, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971). Although the better view seems to us to favor instruction on the nontaxability of damages, we note that the instructions may be complex in a case like the present one, where partial loss of earning capacity would involve comparison between tax rates at different income levels. *See Burlington Northern, Inc. v. Boxberger,* 529 F.2d 284, 287–295 (9th Cir. 1975); *Domeracki v. Humble Oil & Refining Co.,* 443 F.2d 1245 (3d Cir. 1971); *but see Kennett v. Delta Airlines,* 560 F.2d 456, 461 (1st Cir. 1977); *Riha v. Jasper Blackburn Corp., supra,* 516 F.2d at 843, 844 n.4; *McWeeney v. New York, New Haven & Hartford R. R.,* 282 F.2d 34 (2d Cir.), *cert. denied,* 364 U.S. 870, 81 S.Ct. 115, 5 L.Ed.2d 93 (1960). The Supreme Court has accepted for review this term a case involving the income tax problem, *Norfolk & Western Ry. v. Liepelt, cert. granted,* 441 U.S. 904, 99 S.Ct. 1990, 60 L.Ed.2d 372 (1979). We shall await the decision of the Supreme Court before reconsidering our position. Failure to give an instruction on nontaxability of damages was not an error.

Appellant also contends that it was error for the trial court to admit evidence of appellee's medical expenses, because those expenses had been paid by insurance. However, the trial court reduced the verdict by the amount of the medical expenses.

Accordingly, the judgment of the district court is affirmed.