Patricia Kay McGOWNE (Kozik), Jimmy DeWayne McGowne, Ronald Kevin McGowne, Appellants,

v.

CHALLENGE–COOK BROS., INC., Appellee.

No. 80–2052.

United States Court of Appeals, Eighth Circuit.

Submitted Aug. 13, 1981.

Decided March 10, 1982.

Rehearing Denied April 6, 1982.

654

Elmer C. Oberhellmann, St. Louis, Mo., for appellant.

Kortenhof & Ely, Ben Ely, Jr., Victoria Spann Sheehan, St. Louis, Mo., for appellee.

Before HENLEY, Circuit Judge, ARNOLD, Circuit Judge, and BECKER,* Senior District Judge.

WILLIAM H. BECKER, Senior District Judge.

This is an appeal by Patricia Kay McGowne Kozik (Mrs. McGowne), who married Mr. Kozik after this action was filed, Jimmy DeWayne McGowne and Ronald Kevin McGowne. The appeal is construed by this Court, as later explained, to be an appeal from a final judgment entered by the District Court on a jury verdict against appellants in favor of appellee Challenge-Cook Bros., Inc. (Challenge-Cook). [Designated Record (R.) 13, 31].

The jury verdict (R. 12) was rendered in a civil action filed in the District Court by appellants against Challenge-Cook to recover damages for the wrongful death of Ronald T. McGowne (McGowne) alleged to have been caused by a concrete mixer manufac-

tured by appellee Challenge-Cook. (R. 1–7). Jurisdiction of the District Court existed because of diversity of citizenship. (R. 2).

At the time of his death, McGowne was married to appellant Mrs. McGowne, and was the father of appellants Jimmy DeWayne McGowne and Ronald Kevin McGowne. [Transcript of Trial (Tr.) 89–90, 107, 113–114].

*Summary of the Material Evidence*

█ For a determination of the contention by appellee Challenge-Cook that the motion by appellee Challenge-Cook for a directed verdict should have been granted, thereby rendering harmless the assigned errors, if any, on this appeal, the evidence and permissible inferences therefrom will be summarized in the light most favorable to the appellants. The denial of a motion for a directed verdict is reviewed under the same standards as a motion for judgment notwithstanding the verdict enumerated by Justice Blackmun (then Circuit Judge Blackmun) in *Hanson v. Ford Motor Co.*, 278 F.2d 586, at 596 (C.A. 8 1960) and recently applied in *Russell v. United Parcel Service, Inc.*, 666 F.2d 1188 (C.A. 8 1981), as follows:

[I]n passing upon the motion for judgment, the trial court and this court are (1) to consider the evidence in the light most favorable to the plaintiffs as the parties prevailing with the jury; (2) to assume that all conflicts in the evidence are resolved by the jury in favor of the plaintiffs; (3) to assume as proved all facts which the plaintiffs' evidence tends to prove; (4) to give the plaintiffs the benefit of all favorable inferences which may reasonably be drawn from the facts proved; and (5) to deny the motion if, reviewing the evidence in this light, reasonable men could differ as to the conclusions to be drawn from it.

In accord are *Polk v. Ford Motor Co.*, 529 F.2d 259, at 266–267 (C.A. 8 1976), *cert.*

* The Honorable William H. Becker, United States Senior District Judge for the Western District of Missouri, sitting by designation.

*denied*, 426 U.S. 907, 96 S.Ct. 2229, 48 L.Ed.2d 832 (1976), applying the above quoted standard of review in a strict liability action based upon the substantive law of Missouri, *Farner v. Paccar, Inc.*, 562 F.2d 518, at 522 (C.A. 8 1977), and *Tribble v. Westinghouse Electric Corp.*, 669 F.2d 1193 (C.A. 8 1982).

McGowne was employed as an apprentice or "helper" mechanic by the Vonder Haar Concrete Company (Vonder Haar) for a little over a year from June 1977 until his death on September 27, 1978. The duties of a mechanic at Vonder Haar were repair work on the concrete plant, and maintenance, upkeep and service of concrete trucks and concrete mixers. The repair work on the concrete plant included fixing rollers, gearboxes, conveyors and gates. The maintenance of the concrete trucks and concrete mixers included changing tires, checking oil, putting in new rear ends, and repairing concrete chutes and concrete chute hoists. About one percent of a mechanic's time at Vonder Haar was devoted to removing lumps of concrete from the drums of the concrete mixers.

The concrete mixers at Vonder Haar are mounted on "cabs" or trucks manufactured by companies such as "Ford" and "International". The concrete mixers are manufactured by one of three companies and are known by the truck drivers and mechanics at Vonder Haar as a "Rex", a "Challenge" or a "Rocket".

The "Challenge" concrete mixer, on which McGowne was working when he was fatally injured, was manufactured by appellee Challenge-Cook and was an "open-ended inclined axis rotating drum mixer". Sand, cement, "aggregate", water and other materials are mixed in the rotating drum of the concrete mixer to form concrete. These materials are "charged" or loaded from an overhead "batch" plant, through the "charging hopper" of the concrete mixer, into the drum of the concrete mixer below. The "charging hopper" is a "cone shaped funnel" and has a top opening which is "36 inches across the back and 26 inches deep". (Tr. 319, 633). Blades or fins are attached (welded in a "spiral") to the inside shell of the drum. When the concrete mixer is "charged" or loaded, the drum and the attached blades are rotated in a direction which has a tendency to draw the materials into the drum. When the concrete is "discharged" or unloaded, the drum and the attached blades are rotated in the reverse direction carrying the concrete up the blades and discharging it out the upper open end of the drum. As the concrete is discharged from the drum, it is collected by the "discharge hopper" or "collecting hopper" of the concrete mixer and is carried from the "discharge hopper" to the lower "discharge chute". A "foldover chute" is connected by a "hinged joint" to the "discharge chute". The "foldover chute" can be unlatched and folded down from a stowed position to become a lower extension of the "discharge chute".

The inside of the "charging hopper" and the upper inside of the drum can be seen from a platform on the back of the concrete mixer. The platform is about 22 inches long and 12 inches wide. The top edge of the "discharge hopper" is about 14 or 15 inches above the platform. The top edge of the "charging hopper" is about 46 or 47 inches above the platform and about 31 inches above the top edge of the "discharge hopper". The rotating fins or blades of the concrete mixer can be seen by a person standing on the platform and looking into the "charging hopper" and drum. Additional evidence favorable to appellants of the "shear point" created by the rotating fins or blades of the concrete mixer, and the absence of a warning near this "shear point" and the "charging hopper", appears in the summary of the testimony of Gerald Rennell below.

Vonder Haar operates about five to six concrete plants. McGowne normally worked at the Vonder Haar "Fenton plant". On the day of his death, September 27, 1978, because of a vacation of another employee, McGowne was working at the Vonder Haar concrete plant on Dorsett Road in Maryland Heights, Missouri (Dorsett plant) rather than at the "Fenton plant". On that

day, a truck driver, employed by Vonder Haar, delivered a load of concrete from the Dorsett plant in a concrete truck equipped with a "Challenge" mixer. While delivering the concrete and returning to the Dorsett plant, the truck driver heard a noise which sounded like a loose piece of concrete bouncing in the drum of the mixer. After returning to the Dorsett plant, the truck driver washed out the concrete that was in the truck, checked in the drum of the concrete mixer, rotated the drum in both directions, "washed the truck off", but was unable to determine the cause of the noise.

The truck driver reported the noise to the dispatcher at the Dorsett plant. The dispatcher told McGowne to check the truck and find the noise. Thereafter, McGowne was seen looking into the "charging hopper" of the mixer while the drum was rotating and was later found dead and decapitated with his lower legs hanging over the "charging hopper" and his body extending into the drum. No witness testified that he or she saw the actions of McGowne at the exact time of McGowne's fatal injury.

Gerald Rennell (Rennell), a safety consultant, testified as an expert witness for the appellants. Rennell testified in part that in November 1979, he inspected a Challenge-Cook mixer on truck number 21 at Vonder Haar (the truck on which McGowne was fatally injured); that Rennell looked into the charging hopper of truck number 21; that he observed a "shear point" created when the rotating fins (or blades) pass the stationary charging hopper of the concrete mixer; that a "shear point" is created when one object passes "another object close enough to cause a shearing action like on a pair of scissors" (Tr. 368); that the "shear point" created by the rotating fins (or blades) was a hazard capable of causing serious injury (Tr. 405); and that it is possible to fall into the charging hopper while standing on the discharge hopper of the concrete mixer (Tr. 500). Rennell also testified in part that in 1972 he inspected concrete mixers at the DeQuindre Sand & Gravel Company which were not substantially different from the concrete mixers manufactured by Challenge-Cook (Tr. 407–

409); that during this inspection he observed workers in a position on the concrete mixers which in his opinion allowed the workers "to reach an area that would be hazardous where there were rotating machine parts or he could slip and fall into an area that there were rotating machine parts" (Tr. 410–413); and that as a result of this inspection he recommended that a warning be placed on the concrete mixers such as a warning placed on the discharge hopper which stated, "Danger, do not stand on this hopper while the drum is rotating" (Tr. 413, 420–421). After a hypothetical question submitting a version of the facts of McGowne's fatal injury (Tr. 431–436), Rennell gave the following opinion testimony (Tr. 435–437):

Q.  ... Sir, do you have an opinion based upon reasonable safety consultation of whether the lack of a warning system placed here caused or contributed to cause the death of Ronald McGowne as I've described to you?
    *    *    *    *    *    *

A.  Yes, I have an opinion.

Q.  What is your opinion?

A.  That it contributed to the accident and that there was no effective warning on this machine to tell the operator of the machine never to climb on the discharge hopper while the drum was rotating.

Q.  What did that play in the accident?
    *    *    *    *    *    *

A.  The fact that if you tell the employee why and how to avoid the hazards then he can perceive better that he should not climb up there with it rotating and ... at least in my opinion, he will perceive the situation and that is why we put warning signs on machines to help the employee understand the problem and how the problem might be avoided.

### The Complaint And Answer

The complaint of appellants was, perhaps unnecessarily, divided into three counts. (R. 1–7).

Count I was entitled "Negligence", and alleged in part that McGowne died while

"operating or using" a concrete mixer manufactured by Challenge-Cook; and that the death of McGowne was the direct and proximate result of the carelessness and negligence of Challenge-Cook because Challenge-Cook failed to design or have designed a "safety bar" on the concrete mixer, failed to install or have installed an "electrical control system of safety for a repair mechanic" on the concrete mixer, and failed to warn of the dangers attendant upon the use of the concrete mixer. (R. 2–4).

Count II was entitled "Strict Liability", and alleged in part that the concrete mixer, manufactured by Challenge-Cook, was "defective and unreasonably dangerous when placed into the stream of commerce"; that the concrete mixer was "being used for the purpose for which it was intended, and in a way in which it was intended to be used" on September 27, 1978; that the concrete mixer was in substantially the same condition on September 27, 1978 as it was when it was manufactured and sold by Challenge-Cook; that McGowne was not aware of the defect that made the concrete mixer unsafe for its intended use; and that the death of McGowne was the direct and proximate result of the defective condition of the concrete mixer because Challenge-Cook failed to design or have designed a safety bar for the concrete mixer, failed to install or have installed an "electrical control system of safety for a repair mechanic" on the concrete mixer, failed to warn of the dangers attendant upon use of the concrete mixer, and failed to eliminate or adequately warn of a "pinch point" in the concrete mixer. (R. 4–6).

Count III was entitled "Exemplary Damages", and alleged in part that the actions of Challenge-Cook were "intentional, willful, wanton and malicious and were done for the purpose of conferring a special economic advantage" to Challenge-Cook and the customers of Challenge-Cook. (R. 6–7).

By a single answer, appellee Challenge-Cook responded to each count. In answer to Count I, appellee Challenge-Cook alleged in part that the negligence of McGowne directly caused or contributed to cause the death of McGowne. (R. 8). In answer to Count II, appellee Challenge-Cook alleged in part that the contributory fault of McGowne directly caused or contributed to cause the death of McGowne. (R. 8–9). In answer to Count III, appellee Challenge-Cook alleged in part that the contributory negligence and contributory fault of McGowne directly caused or contributed to cause the death of McGowne. (R. 9).

### The Trial, Verdict and Judgment

A jury trial was commenced on October 6, 1980. (R. 38). At trial, the District Court precluded the appellants from submitting their case to the jury on any theory of recovery other than strict liability based upon the failure of appellee Challenge-Cook to place a warning sign on the concrete mixer. (Tr. 543–544).

At the conclusion of the trial, the jury rendered a verdict in favor of Challenge-Cook and against appellants. (R. 12). The District Court entered judgment upon the jury verdict, and ordered and adjudged that appellants recover nothing from Challenge-Cook. (R. 13). Appellants filed a timely motion for new trial which was denied by the District Court. (R. 26).

### Sufficiency of the Notice of Appeal

Appellants filed the following timely notice of appeal (R. 31):

Notice is hereby given by the plaintiffs, Patricia Kaye [sic] McGowne (Kozik), Jimmy DeWayne McGowne, and Ronald Kevin McGowne, in the above-entitled action to the defendant, Challenge-Cook Bros., Inc., that they are hereby appealing the Order of the Honorable Judge Clyde Cahill entered on November 6, 1980, who presided in this case and entered judgment for the defendant, Challenge-Cook Bros., Inc., against plaintiffs in plaintiff's complaint.

The order of November 6, 1980, referred to in the notice of appeal, denied the motion by appellants for a new trial. (R. 26). Because it is the obligation of this Court to raise and determine any questions of jurisdiction not raised by the parties, we will determine the sufficiency of the above notice of appeal.

In the notice of appeal, appellants expressly appeal from the order of the District Court denying the motion by appellants for a new trial, rather than expressly from the final judgment. (R. 26, 31). Under federal appellate procedure, an order denying a motion for a new trial is not appealable, in the absence of exceptional circumstances. 11 Wright and Miller, *Federal Practice and Procedure*, § 2818 at pages 116–117; 6A *Moore's Federal Practice*, ¶ 59.15[1]; and cases therein cited. The appellants' notice of appeal is, therefore, technically defective because it fails to designate this appeal as one from the final judgment. However, we have held that when "the appeal is otherwise properly taken and the intent of the appellant to appeal from the final judgment is clear, we may treat the appeal as if taken from the final judgment." *Walther v. Omaha Public Power District*, 412 F.2d 1164, at 1165–1166 note 1 (C.A. 8 1969) construing an appeal from an order denying a motion for a new trial as an appeal from a final judgment; *Gray v. General Motors Corp.*, 434 F.2d 110, at 111–112 (C.A. 8 1970). *Cf.* 11 Wright and Miller, *Federal Practice and Procedure*, § 2818 at pages 117–118; 6A *Moore's Federal Practice*, ¶ 59.15[1]. And we have held that "in accordance with a policy of liberal construction of notices of appeal in situations where intent is apparent and there is no prejudice to the adverse party, this court will consider [the] appeal on its merits." *Simpson v. Norwesco, Inc.*, 583 F.2d 1007, at 1009 note 2 (C.A. 8 1978) construing an appeal from an order denying a motion for judgment notwithstanding the verdict or for new trial as an appeal from a final judgment. *Cf. Foman v. Davis*, 371 U.S. 178, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962).

For these reasons, and because we find there is no prejudice to appellee, this appeal is construed as an appeal from the final judgment of the District Court. Therefore, this Court has jurisdiction, and will consider this appeal on its merits.

### The Contentions On Appeal

On appeal, the appellants contend (1) that the District Court erred "in its instruction to the jury regarding the effect on the defendant's liability of an 'obvious and apparent' danger"; (2) that the District Court erred in excluding evidence of "the condition of the concrete mixer at the time of the accident"; (3) that the District Court erred in excluding evidence of "post-accident warning notices"; and (4) that the District Court erred "in not allowing expert testimony concerning the effect of inflation when estimating future lost income" of McGowne.

In opposition, appellee Challenge-Cook contends (1) that the District Court did not err "in presenting Instruction No. 4 to the jury for the reason that the instruction presented a correct statement of Missouri law and the instruction was based upon competent evidence"; (2) that the District Court did not err "in excluding supposed evidence relating to washing of the concrete mixer"; (3) that the District Court did not err "in excluding evidence of warnings issued after the accident for the reason that the warning sought to be entered into evidence was irrelevant to the case"; and (4) that the District Court did not err "in excluding plaintiffs' expert economist's testimony relating to predicted future rates of inflation for the reason that errors affecting the issue of damages are cured by a jury verdict of no liability."

Appellee Challenge-Cook also contends that the District Court erred "in overruling the defendant's motion for a directed verdict at the close of the entire case for the reason that the plaintiffs wholly failed to prove a submissible case of liability" rendering harmless the alleged errors, if any, in instruction and refusal to admit evidence.

After considering the above contentions, we reverse the judgment of the District Court for the reasons stated hereinafter.

### I

### *The District Court Did Not Err in Denying the Motion by Challenge-Cook for a Directed Verdict*

Appellee Challenge-Cook contends that the District Court erred in denying the mo-

tion by Challenge-Cook for a directed verdict for reason that appellants failed to prove a submissible case of strict liability. If this contention is correct, other assigned errors on this appeal are harmless and immaterial.

■ In determining the correctness of appellee's contention the evidence is reviewed under the standards set forth above at the beginning of the section on the summary of the material evidence.[1] Applying these standards, we conclude that the evidence in the record was sufficient to establish a submissible case of strict liability.

■ In this federal diversity action, the law of Missouri governs the determination of the substantive issue of liability. *Erie Railroad Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). Missouri has adopted the substantive law on strict liability set forth in Section 402 A, *Restatement (Second) of Torts. Keener v. Dayton Electric Manufacturing Co.,* 445 S.W.2d 362, at 364 (Mo.1969); *McIntyre v. Everst & Jennings, Inc.,* 575 F.2d 155, at 157 (C.A. 8 1978), *cert. denied,* 439 U.S. 864, 99 S.Ct. 187, 58 L.Ed.2d 173 (1978). *Cf. Missouri Approved Jury Instructions,* 3rd Ed. 1981 (MAI) No. 25.04 effective in its present form on July 1, 1978, and No. 25.05 effective on July 1, 1978.

Section 402 A, *supra,* provides:

(1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if

(a) the seller is engaged in the business of selling such a product, and

(b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold. (2) The rule stated in Subsection (1) applies although

(a) the seller has exercised all possible care in the preparation and sale of his product, and

(b) the user or consumer has not bought the product from or entered into any contractual relation with the seller.

Appellee Challenge-Cook contends that appellants failed to prove that the concrete mixer was "unreasonably dangerous" and "defective" as required by Section 402 A, *supra.* In this connection appellee argues that the danger encountered by McGowne was "open, obvious, and apparent", that an open, obvious and apparent danger is not "unreasonably dangerous", and further that a manufacturer or seller has no duty to warn of an obvious danger.

On this appeal it is unnecessary to determine if, in a strict liability action based upon the failure to warn, the plaintiff is required to prove that the product is both "defective" and "unreasonably dangerous". We note that Comment *h* of Section 402 A provides that if a seller has reason to anticipate that danger may result from a particular use of the seller's product, the seller "may be required to give adequate warning of the danger . . . and a product sold without such warning is in a *defective condition.*" (Emphasis added.) *Restatement (Second) of Torts,* § 402 A at 351–352. Comment *j* of Section 402 A provides that "[i]n order to prevent the product from being *unreasonably dangerous,* the seller may be required to give directions or warning . . . as to its use." (Emphasis added.) *Restatement (Second) of Torts,* § 402 A at

---

1. The standard for granting or denying a motion for a directed verdict is the same under federal law and the law of Missouri. *Hladyshewski v. Robinson,* 557 F.2d 1251, at 1252 (C.A. 8 1977) citing *Savage v. Christian Hospital Northwest,* 543 F.2d 44, at 46 (C.A. 8 1976). In *Savage v. Christian Hospital Northwest, supra,* 543 F.2d at 46 (C.A. 8 1976), we stated:

   Under both federal and Missouri law "[a] verdict can be properly directed only when the evidence is such that, without weighing

the credibility of the witnesses, there can be but one reasonable conclusion as to the verdict." . . . "A directed verdict is in order only where the evidence points *all one way* and is susceptible of *no* reasonable inferences sustaining the position of the non-moving party." . . . "In making this determination, the evidence, together with all reasonable inferences to be drawn therefrom, must be viewed in the light most favorable to the nonmoving party." (Citations omitted.)

353; *Caplaco One, Inc. v. Amerex Corp.*, 435 F.Supp. 1116, at 1119 (E.D.Mo.1977), *affirmed*, 572 F.2d 634 (C.A. 8 1978).

■ After reviewing the record in the light most favorable to the appellants, we conclude that the evidence, and the reasonable inferences therefrom, were sufficient to submit the "defective condition" and "unreasonably dangerous" issues to the jury. It could be reasonably inferred from the evidence, including the testimony of Gerald Rennell, an expert witness for the appellants, that a warning was required to prevent the concrete mixer from being "in a defective condition" and "unreasonably dangerous". So the District Court did not err in submitting the case to the jury on the warning theory, although the limited scope of the submission is subject to question.

■ Appellee also contends that the appellants failed to prove that McGowne was using the concrete mixer in a manner which could have been reasonably anticipated by Challenge-Cook. Under the substantive law of Missouri, one of the essential elements of proof in strict liability action is that the plaintiff must show that the product was being used in a manner which could have been reasonably anticipated by the manufacturer.[2] *Hoppe v. Midwest Conveyor Co.*, 485 F.2d 1196, at 1200 (C.A. 8 1973); *Keener v. Dayton Electric Manufacturing Co., supra*, 445 S.W.2d at 365–366 (Mo. 1969); *Higgins v. Paul Hardeman, Inc.*, 457 S.W.2d 943, at 948 (Mo.App.1970); *Missouri Approved Jury Instructions*, 3rd Ed. 1981 (MAI) No. 25.04 and No. 25.05. And under the substantive law of Missouri, "strict liability in tort is based in part on the foreseeable or 'reasonably anticipated' *use* of the product . . . rather than on the reasonably anticipated *harm* the product may cause." *Blevins v. Cushman Motors*, 551 S.W.2d 602, at 607–608 (Mo. en banc 1977). The issue is one of foreseeability *and includes the foreseeable misuse of the product. Hoppe v.*

*Midwest Conveyor Co., supra*, 485 F.2d at 1200–1201 (C.A. 8 1973); *Vanskike v. ACF Industries Inc.*, 665 F.2d 188, at 195 (C.A. 8 1981); *Rogers v. Toro Manufacturing Co.*, 522 S.W.2d 632, at 638 (Mo.App.1975); *Higgins v. Paul Hardeman, Inc., supra*, 457 S.W.2d at 948 (Mo.App.1970).

■ After reviewing the record, in the light most favorable to the appellants, we conclude that the evidence was sufficient to submit, to the jury, the issue whether the use or the misuse of the concrete mixer by McGowne was in a manner which could have been reasonably anticipated by Challenge-Cook. As noted above no witness testified that he or she saw the position of McGowne on the concrete mixer at the exact time of his fatal injury. And a jury could reasonably infer from the evidence that the workers at Vonder Haar could not see the entire inside of the drum while standing on the platform of the mixer; that the mechanics at Vonder Haar inspected the drums of the concrete mixers while the drums were rotating; and that, in order to see the entire inside of the drum, the mechanics at Vonder Haar inspected the drums while standing with both feet on the discharge hopper or with one foot on the discharge hopper and one foot on the platform. Further, the evidence warranted a finding that the inspection by McGowne while the drum was rotating could have been reasonably anticipated by appellee. For example, William Hubbartt, a truck driver for Vonder Haar, who shortly before McGowne's death observed McGowne looking through the charging hopper into the rotating drum, testified as follows (Tr. 330):

Q. From your experience with this number twenty-one and similar or identical mixers, was what you saw Mr. McGowne doing before you found, you know, the second time when you saw him there, was that the correct practice to inspect a drum on that mixer the way he was doing it?

---

**2.** In *Rogers v. Toro Manufacturing Co.*, 522 S.W.2d 632, at 637 (Mo.App.1975) the Missouri Court of Appeals stated:

Although some writers refer to "abnormal use" (a use not reasonably anticipated) as a

defense to the action, it is not properly a defense but a necessary element of plaintiffs' cause of action.

A. I don't know what Bud Eidson told him, if he had a fin busted loose or if there was something in the barrel.

Q. Okay, but is it correct practice to inspect the drum for noises while the mixer is on?

A. If he's got a busted fin that would be the way to look at it I would think anyway.

We conclude that the above evidence was sufficient to submit the issue of anticipated use, as well as misuse, to the jury.

▬▬▬ Appellee also contends that McGowne was "guilty of contributory fault as a matter of law." This contention is not supported by the evidence. Under the substantive law of Missouri and Section 402 A, *supra*, while contributory negligence does not bar recovery, contributory fault is an affirmative defense to strict liability. *Collins v. B. F. Goodrich Co.*, 558 F.2d 908, at 911 (C.A. 8 1977); *Keener v. Dayton Electric Manufacturing Co., supra*, 445 S.W.2d at 365 (Mo.1969); *Restatement (Second) of Torts*, § 402 A, Comment *n* at 356. Under Missouri law, the defense of contributory fault bars recovery if it is proved by a preponderance of the evidence that (1) when the product is used, the user or consumer knew of the danger and appreciated the danger of its use, and (2) the user or consumer of the product voluntarily and unreasonably exposed himself to such danger, and (3) such conduct directly caused or directly contributed to cause any damage the user may have sustained. MAI No. 32.23, effective in its present form on July 1, 1978. *Cf. Keener v. Dayton Electric Manufacturing Co., supra*, 445 S.W.2d at 365 (Mo.1969); *Higgins v. Paul Hardeman, Inc., supra*, 457 S.W.2d at 948 (Mo.App. 1970); *Restatement (Second) of Torts*, § 402 A, Comment *n* at 356.

▬▬ Appellee did not prove this affirmative defense as a matter of law. After reviewing the record, we cannot conclude, as a matter of law, that McGowne voluntarily and unreasonably exposed himself to a known and appreciated danger. As noted above, no witness saw the actions of McGowne at the exact time of his fatal injury. And it could reasonably be inferred from the evidence that in the absence of a warning a worker could fall into the charging hopper and be injured by the rotating blades while working on the concrete mixer with both feet on the discharge hopper, or with one foot on the discharge hopper and one foot on the platform. Because, in this state of the evidence the issue of contributory fault was for the jury, the District Court did not err in denying the motion by Challenge-Cook for a directed verdict.

## II

### *The District Court Erred in Giving Instruction No. 4*

Over the objection of appellants, the District Court gave Instruction No. 4 which is as follows (Tr. 720):

Instruction No. 4

If you find that the danger to which Ronald McGowne was exposed while working on the concrete mixer manufactured by the Defendant, Challenge-Cook Bros., Inc., was an obvious and apparent danger, then you must find for the Defendant.

Appellants contend that this instruction was erroneous for reason that it incorrectly stated the substantive law of Missouri.

▬▬▬ We note that, although state law determines the substance of jury instructions in diversity actions, the procedure in granting or denying instructions is controlled by federal law. *Barger v. Charles Machine Works, Inc.*, 658 F.2d 582, at 586 (C.A. 8 1981); *Wright v. Farmers Co-op of Arkansas and Oklahoma*, 620 F.2d 694, at 696–697 (C.A. 8 1980). In reviewing an instruction to determine whether or not it correctly sets forth the applicable law, we are bound to read and consider the charge as a whole. *Wright v. Farmers Co-op of Arkansas and Oklahoma, supra*, 620 F.2d at 697. "A single erroneous instruction will not necessarily require reversal if the error was cured by a subsequent instruction or by consideration of the entire charge." *Wright v. Farmers Co-op of Arkansas and Oklahoma, supra*, 620 F.2d at 697.

■ After reviewing the charge as a whole, we conclude that the giving of Instruction No. 4 was prejudicial error for the reasons stated hereinafter. While the giving of an instruction on contributory fault was warranted by the evidence, the instruction did not correctly set forth all the essential elements of contributory fault under the applicable substantive law of Missouri. It was therefore improperly included in the charge.

■ Under Missouri law an obvious or apparent danger is "pertinent" to the issue of whether McGowne was "contributorially" at fault, *Higgins v. Paul Hardeman, Inc., supra*, 457 S.W.2d at 947 (Mo.App. 1970), but does not alone constitute a defense to a submissible case of strict liability under Section 402 A, *supra*, for the following reasons.

■ Under the substantive law of Missouri contributory fault is an affirmative defense in a strict liability action under Section 402 A, *supra*. *Means v. Sears, Roebuck and Co.*, 550 S.W.2d 780, at 787 note 6 (Mo. en banc 1977); *Missouri Approved Jury Instructions*, 3rd Ed. 1981 (MAI) Chapter 32.00 on "Affirmative Defenses", Instruction No. 32.23. And the burden of proof is on the party asserting an affirmative defense to establish all the elements of that defense. See cases cited in MAI, under Instruction No. 3.01. Because Instruction No. 4 did not require proof of all the elements of contributory fault, which were and are set forth in Instruction No. 32.23 of MAI cited above, the instruction incorrectly stated the law of Missouri on the affirmative defense of contributory fault.

Appellee Challenge-Cook contends that Instruction No. 4 is a correct statement of Missouri law because it was presented as a converse instruction to the appellants' verdict directing instruction, and not as an instruction on contributory fault. In this connection, appellee argues that, in a strict liability action based on the failure to warn, liability does not exist if the defect is open or obvious because there is no duty to warn of an open and obvious danger. Appellee argues that this conclusion is derived from *Restatement (Second) of Torts*, § 402 A Comment *i*, which states that in order for a product to be unreasonably dangerous "[t]he article sold must be dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases it, with the ordinary knowledge common to the community as to its characteristics."

We conclude that the instruction is not a correct converse instruction for reason that it does not properly submit the absence of an essential element of strict liability under Section 402 A of the *Restatement, supra*, and under the law of Missouri.

Further, viewing Instruction No. 4 as an "affirmative converse" instruction, submitting independently a full defense, will not justify its inclusion in the charge. In this view the instruction is an erroneous verdict directing instruction. For example, in a strict liability action, an analogous erroneous affirmative converse instruction was condemned in *Shephard v. Ford Motor Co.*, 457 S.W.2d 255, at 258 (Mo.App.1970). Affirmative converse instructions and the frequent error in their use are discussed in Thomas, *Converse Instructions Under MAI*, 42 Mo.L.Rev. 175, Part VI at pages 200–206.

■ The obviousness of a defect or danger is material to the issue whether a product is "unreasonably dangerous". *Cf.* Annotation, *Products Liability: Product as Unreasonably Dangerous or Unsafe Under Doctrine of Strict Liability in Tort*, 54 A.L. R.3d 352, at 367–368 and cases therein cited. We conclude, however, that Instruction No. 4 was not a legally correct converse of the "unreasonably dangerous" element. The issue is not whether a jury can conclude that danger is obvious or apparent, but is whether the jury can conclude that the danger is obvious and apparent to the extent that the product was not "unreasonably dangerous". Because Instruction No. 4 did not correctly set forth the effect of an obvious danger upon the "unreasonably dangerous" element, we conclude that the instruction was an incorrect statement of the substantive law of Missouri on that issue.

In a number of strict liability actions based upon the failure of the manufacturer to warn of danger, the courts have recognized that the duty to warn does not attach when the danger is obvious to the injured person. Annotation, *Failure to Warn as a Basis of Liability Under Doctrine of Strict Liability in Tort*, 53 A.L.R.3d 239, at 257–259 and cases therein cited. And under the substantive law of Missouri a manufacturer may not have a duty to warn against risk of harm if the dangerous conditions of its product are open, obvious and apparent. *Cf. Haines v. Powermatic Houdaille, Inc.*, 661 F.2d 94, at 96 note 1 (C.A. 8 1981). The *dictum* in note 1 of *Haines* about the absence of a duty to warn was expressly based on *Coleman v. Buehner*, 444 S.W.2d 16, at 22 (Mo.App.1969), a simple negligence case decided prior to the adoption in Missouri of the doctrine of strict liability of § 402 A of the *Restatement, supra*. We conclude that Instruction No. 4 does not correctly state the substantive law on this issue. The issue is not whether a jury can conclude that the danger is obvious or apparent, but is whether the jury can conclude that the danger is obvious and apparent to the extent that the manufacturer has no legal duty to warn of the danger when all of the evidence is considered. Because Instruction No. 4 did not fairly and fully set forth the effect of an obvious danger upon the duty of appellee Challenge-Cook to warn, we conclude that the instruction is an incorrect statement of the substantive law of Missouri on that issue, and is an erroneous affirmative converse instruction.

Further, we conclude that the error in Instruction No. 4 was not cured by any other instruction or by consideration of the entire charge. The District Court gave Instruction No. 3, which is as follows (Tr. 719–720):

Your verdict must be for Plaintiffs if you believe:

First, Defendant manufactured the concrete mixer in the course of Defendant's business, and

Second, the concrete mixer was then in a defective condition unreasonably dangerous when put to a reasonably anticipated use, and

Third, the concrete mixer was used in a manner reasonably anticipated, and

Fourth, Ronald McGowne died as a direct result of such defective condition as existed when the concrete mixer was sold. *Unless you believe Plaintiffs are not entitled to recover by reason of other instructions herein.* (Emphasis added.)

Instruction No. 3 set forth a direct reference, requested by appellee Challenge-Cook, to the other instructions in the charge, including the erroneous verdict directing Instruction No. 4. Therefore, the jury could have been easily misled by the incorrect statement of law in Instruction No. 4. (The correctness of Instruction No. 3 is not determined in the light of the failure to refer to reasonably anticipated misuse, and other possible criticisms. It is noted, however, that a similar instruction, effective in 1978, appears as MAI No. 25.04, 3rd Ed. 1981, at page 345.)

Because Instruction No. 4 was prejudicially erroneous, we reverse the judgment of the District Court and remand for a new trial.

### III

### *The Wet Condition Of The Concrete Mixer*

Appellants contend that the District Court erred in excluding evidence that the "concrete hopper and platform" of the concrete mixer were slippery when wet and had been "washed or hosed down shortly before" the fatal injury of McGowne. Appellants invite our attention to the ruling of the District Court preventing a truck driver of Vonder Haar from testifying that the trucks at Vonder Haar are "always washed down . . . before they leave the batch plant, before they come in and after a job." (Appellants' offer of proof at Tr. 211–212).

The reasonably foreseeable wet or slippery condition of the platform, discharge hopper, charging hopper and other

parts of the concrete mixer is relevant to and admissible on the issue whether a warning is required to prevent the blades of the concrete mixer from being "unreasonably dangerous" to a person working near the blades of the concrete mixer. And the wet or slippery condition of the concrete mixer is relevant to and admissible on the defense of contributory fault and the issue whether McGowne voluntarily and unreasonably proceeded to encounter a known danger. " 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." *Federal Rules of Evidence*, Rule 401. And all relevant evidence, except as otherwise provided by law, is admissible. *Federal Rules of Evidence*, Rule 402.

■ Appellee's contention that the evidence is not admissible because the appellant did not plead that a slippery condition existed is obviously without merit. It is not necessary to plead evidence under federal principles of notice pleading.

Evidence was admitted by the District Court which showed that the outside of a concrete truck at Vonder Haar was washed four to fourteen times a day; that it was foreseeable by appellee Challenge-Cook that the truck drivers would wash the trucks after they had been loaded and unloaded; and that the driver of the truck on which McGowne was fatally injured "washed the truck off" shortly before McGowne's death. In light of the admission of this similar and possibly cumulative evidence, we do not determine whether the offer of proof by appellants was sufficient, or whether the ruling of the District Court was prejudicial error. We note that the repetition of any prejudicial error in the ruling of the District Court can be easily avoided on retrial of this action.

## IV

### *The Admissibility of "Post-Accident Warning Notices"*

Appellants contend that the District Court erred in excluding evidence of "post-accident warning notices". This assignment of error raises questions in a developing and changing field of law. If these questions recur on retrial, they must be determined on the then controlling legal principles and decisions.

For example, the developing interpretations on the admissibility of subsequent remedial measures under Rule 407, *Federal Rules of Evidence,* are discussed in Fincham, *Federal Rule of Evidence 407 and Its State Variations: The Courts Perform Some "Subsequent Remedial Measures" of Their Own in Products Liability Cases,* 49 UMKC L.Rev. 338 *et seq.* (1981). This Comment analyzes the state and federal cases on the exclusion of evidence of subsequent remedial measures. Included in these cases are *Robbins v. Farmers Union Grain Terminal Ass'n,* 552 F.2d 788 (C.A. 8 1977) and *Farner v. Paccar, Inc.,* 562 F.2d 518 (C.A. 8 1977) in which this Court held that Rule 407, *supra,* is not applicable in strict liability actions. In contrast, the Second Circuit Court of Appeals has held that Rule 407, *supra,* is applicable in strict liability actions. *Cann v. Ford Motor Co.,* 658 F.2d 54, at 59–60 (C.A. 2 1981) noting that courts "have split over the proper resolution of this issue."

We note that on retrial these and other possible recurring questions can be determined by the District Court under the developing law then controlling, including exercise of its discretion within lawful limits.

## V

### *The Exclusion of Evidence of Inflation*

■ Appellants contend that the District Court erred in excluding expert testimony on the effect of inflation on the lost future income of McGowne. Dr. Leroy Grossman (Dr. Grossman), a professor of economics at St. Louis University, was called by the appellants as an expert witness on the lost future income of McGowne. In limiting the proposed testimony of Dr. Grossman, the District Court made the following rulings (Tr. 299–300):

I will overrule the objection of the Defendant and will allow Dr. Grossman to testify to the following circumstances: He may give a historical analysis of what has happened in the past in terms of inflation and may indicate what the inflation rate would be as of 1981 because the Court feels that that short term really— relatively short time can be reliably estimated by a professional and an expert and would not likely change within a year. The Court will not allow him, however, to project what the economic changes leading to inflation or what the rates would be beyond 1981 and there will be no testimony allowed as to that.

The Court will allow him to use as a basis of his salary loss the income he was earning at the time of his death and at the time of the conclusion of the contract with the union which goes I believe until 1980 or '81. Beyond that, Dr. Grossman will not be allowed to testify as to what he might have earned or promotions or wage increases he might have received because of the fact that he's only working this job one year.

After these rulings, the appellants objected in part to the exclusion of testimony by Dr. Grossman on the future rates of inflation (Tr. 301), and the District Court made the following rulings (Tr. 302):

... [The] speculative nature of inflation is the reason why I'm precluding that. You may argue it it seems to me to the jury so that they may take into consideration using their general knowledge and their general beliefs the effect of inflation but to try to predict a rate is so fraught with speculation that no expert could do it.

At the conclusion of their case in chief, the appellants made an offer of proof in which they contended that Plaintiffs' Exhibit 21 contained data which was the basis of an opinion by Dr. Grossman. The data in this exhibit showed what a 32.1 year old man, employed as a mechanic of diesel trucks in the construction industry, would have been paid until retirement at age 65 and at age 70, based on a 0%, a 3%, a 6% and an 8% "annual cost increase". (Tr. 551, Plaintiffs' Exhibit 21). After this offer of proof, the District Court stated (Tr. 552):

... I want to point out on the record that what the Court tried to do was not to limit the Plaintiff to any indication that there would be inflation but that based on the knowledge at hand today there is no way to make any long-term speculative determinations as to what the rate of inflation would be fifteen, twenty, thirty or forty years hence. That's why we did allow and the witness did testify to the fact that there has been a history of increased inflation starting with about three percent and going up to the very high rates that we have now.

Initially, we note that, because the jury found for appellee Challenge-Cook on the issue of liability, and did not reach the issue of damages, the error, if any, in the exclusion of evidence of inflation cannot now be determined to be prejudicial. *Scheib v. Williams-McWilliams Co.*, 628 F.2d 509, at 511 (C.A. 5 1980). However, because the issue may recur on retrial of this action, we make the following comment.

It is clear from the above rulings of the District Court that the jury was allowed to consider limited evidence of the effect of inflation on the lost earning capacity of McGowne. Therefore, the issue before the Court is not the admissibility of expert opinion on the effect of inflation on future lost earning capacity, but is the admissibility of expert testimony which predicts (1) estimated future rates of inflation beyond 1981 and (2) estimated future increases in earnings after 1981.

The admissibility of expert testimony is governed by Rule 702 of the *Federal Rules of Evidence*. Under Rule 702, *supra*, the "[a]dmission or exclusion of expert testimony is a matter within the sound judicial discretion of the trial court, and the trial court's decision should not be reversed unless found to be 'manifestly erroneous.'" *Soo Line Railroad Co. v. Fruehauf Corp.*, 547 F.2d 1365, at 1374 (C.A. 8 1977). The law of Missouri is applicable because "[t]he measure of damages and consequently the

limits of relevancy in this diversity case are set by the substantive law of [Missouri]." *Johnson v. Serra*, 521 F.2d 1289, at 1294 (C.A. 8 1975).

In *Taenzler v. Burlington Northern*, 608 F.2d 796, at 799 note 6 (C.A. 8 1979) we noted:

> In cases where we have applied state law, we have held expert testimony directly predicting some future inflation rate admissible in this kind of case under Iowa law, *Raney v. Honeywell*, 540 F.2d 932 (8th Cir. 1976), but inadmissible under Nebraska law, *Riha v. Jasper Blackburn Corp.* [516 F.2d 840 (8th Cir.)], *supra*, and under Minnesota law, *Johnson v. Serra*, *supra*. But see *Ossenfort v. Associated Milk Producers, Inc.*, 254 N.W.2d 672 (Minn.1977) (expert testimony predicting future inflation admissible).

In *Morrow v. Greyhound Lines, Inc.*, 541 F.2d 713, at 722–724 (C.A. 8 1976), we declined to determine the Missouri law on this issue because the issue was not preserved for appeal.

The Missouri law on the admissibility of expert testimony on future earning capacity is outlined in *Sampson v. Missouri Pacific Railroad Co.*, 560 S.W.2d 573, at 589 (Mo. en banc 1978), three judges dissenting on other grounds. In *Sampson v. Missouri Pacific Railroad Co.*, *supra*, 560 S.W.2d at 589 (Mo. en banc 1978), the Missouri Supreme Court stated:

> "[T]he 'extent of future harm to the earning capacity of the injured person is measured by the difference viewed as of the time of trial between the value of the plaintiff's services as they will be in view of the harm and as they would have been had there been no harm.'" *Coffman v. St. Louis-San Francisco Ry. Co.*, 378 S.W.2d 583, 595 (Mo.1964). A figure for loss of future wages "is not to be permitted when formed from speculation and conjecture, but only when established with reasonable certainty", *Hodges v. Johnson*, 417 S.W.2d 685, 689 (Mo.App. 1967) upon which "substantial evidence" must be introduced. *Seymour v. House*, 305 S.W.2d 1, 7 (Mo.1957).

We have given weight in the evaluation of damage awards to changing economic conditions, *Braun v. Roux Distributing Co. Inc.*, 312 S.W.2d 758, 768–69 (Mo.1958); *Rodefeld v. St. Louis Public Service Co.*, *supra* [275 S.W.2d 256] at 262 [Mo.], including consideration for "continuing inflation", *Fann v. Farmer*, 289 S.W.2d 144, 150 (Mo.App.1956). In *Coffman, supra*, we approved the use of reasonably expected salary increases "from which to determine a fairly approximated present-value award compensating plaintiff for what he would have earned, but for his injury." *Id.* at 600.

Dr. Wagner admitted under cross-examination that projected wage increases "may not take place." He also insisted that increased productivity of the automotive industry is not inflationary and that said productivity, and not inflation, was the measure of the 7.3% wage increase projection. Inevitably there is a degree of speculative nature to the determination of a "fairly approximated present-value award compensating plaintiff for what he would have earned, but for his injury", but we do not find such speculation, when based upon the use of facts in reasonable calculations, to be so purely conjectural as to improperly influence the jury's verdict as to damages. This testimony was not a mere forecast of the effects of inflation, *see Haley v. Byers Transportation Co.*, 414 S.W.2d 777, 782 (Mo.1967), but a prediction based upon reasonable certainty, *Hodges, supra*, and the best available evidence, *Hargis v. Sample*, 306 S.W.2d 564, 569 (Mo.1957). (Footnote omitted.)

In the *Sampson* opinion, *supra*, the Missouri Supreme Court upheld the admission of the testimony of an economic expert which projected a "wage growth rate" of 7.3% for an employee of the General Motors Corporation, based upon the "history of increased productivity in the automotive industry." *Sampson v. Missouri Pacific Railroad Co.*, *supra*, 560 S.W.2d at 588–589 (Mo. en banc 1978).

The federal law on this issue was discussed by the United States Supreme Court in *Norfolk and Western Railway Co. v. Liepelt*, 444 U.S. 490, 100 S.Ct. 755, 62 L.Ed.2d 689 (1980), *rehearing denied*, 445 U.S. 972, 100 S.Ct. 1667, 64 L.Ed.2d 250 (1980), and by this Court in *Taenzler v. Burlington Northern, supra*, 608 F.2d 796 (C.A. 8 1979).

In the *Liepelt* opinion, *supra*, the United States Supreme Court stated:

> ... future employment itself, future health, future personal expenditures, future interest rates, and *future inflation* are also matters of estimate and prediction. Any one of these issues might provide the basis for protracted expert testimony and debate. (Emphasis added.)

*Norfolk and Western Railway Co. v. Liepelt*, 444 U.S. 490, at 493, 100 S.Ct. 755, at 757, 62 L.Ed.2d 689, at 694 (1980), *rehearing denied*, 445 U.S. 972, 100 S.Ct. 1667, 64 L.Ed.2d 250 (1980).

We note that the law on the admissibility of expert evidence of future rates of inflation is not static. And we have noted that the "trend appears to be toward increasing consideration of inflation." *Taenzler v. Burlington Northern, supra*, 608 F.2d at 800 note 9 (C.A. 8 1979) and cases therein cited. Because the jurisprudence on these issues is not static, we decline to predict the future Missouri and federal law on these issues. We note that if these issues recur on retrial of this action, the ruling of the District Court should be made in light of the above authorities, the authorities cited therein, and any subsequent jurisprudence that may be added or develop.

### Conclusion

For the foregoing reasons, the judgment of the District Court is reversed and the action is remanded for a new trial.